### LAMSON CO. v. G. & G. ATLAS SYSTEMS, Inc.

(Circuit Court of Appeals, Second Circuit. July 6, 1926.)

No. 349.

**1. Patents ⬡⟾328.**

Maclaren patent, No. 1,443,795, claims 5 and 6, for electrically controlled pneumatic dispatch system, *held* not infringed.

**2. Patents ⬡⟾328.**

Maclaren patent, No. 1,396,499, claim No. 10, for improvement in pneumatic dispatch apparatus *held* not infringed.

**3. Patents ⬡⟾236.**

It is no defense that infringer consolidates two features of claim into a single part of his apparatus.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Lamson Company against G. & G. Atlas Systems, Inc., for infringement of patents Nos. 1,443,795, claims 5 and 6, and 1,396,449, claim 10, both for improvement in pneumatic dispatch systems and controls. Decree for defendant, and plaintiff appeals. Decree modified, and bill dismissed.

The following is the opinion of District Judge Augustus N. Hand, referred to for the facts, omitting the caption:

"This is a motion for a preliminary injunction to restrain the infringement of United States patent No. 968,576, issued August 30, 1910, to Charles Libby. A suit was brought by the same complainant against E. T. Slattery Company, in the Massachusetts District, and after a full trial and very careful opinion by Judge Morton, the defendant was held to infringe. The decree has just been affirmed by the Circuit Court of Appeals for the First circuit, and the defense in that litigation was conducted by the defendant here, who is the manufacturer of the alleged infringing device. While the decision in the First circuit is not technically res adjudicata, because the decree there is interlocutory, it is of the highest probative force, and should be followed unless clear reasons can be advanced for reaching a different conclusion.

"The only patent of any importance which is now produced that was not before Judge Morton is the Fordyce patent, No. 777,723. That patent, however, is for a closed and not an open system. The indispensable feature of the Libby patent was the maintenance of a continuous minimum flow of air. It is perfectly true that Libby accomplished this through a by-pass, while the defendant accomplished it through a partially closed valve. As the stipulation between the parties (Record p. 13) says: 'When there is no carrier in the line, the valve is left open just enough to permit the atmospheric air above the valve to leak by in response to the slight pull of the vacuum drum when the exhauster is running at its lowest speed.'

"Judge Morton held that defendant's partially closed valve was the mechanical equivalent of complainant's by-pass. To be sure, the first claim of the Libby patent speaks of 'a normally closed air valve located in said exhaust tube,' and the second claim a 'normally closed air valve controlling the flow of air through said exhaust tube.' Judge Morton held that defendant's valve was closed, within the meaning of claims 1 and 2 of the Libby patent, when it was sufficiently shut to stop the wasteful flow of air. He also held that the words of element in claim 1, 'a connection between said exhaust tube and said transit tube for normally permitting a minimum flow of air through said transit tube,' were met by the defendant's valve, which makes a connection between the exhaust tube and the transit tube. This he did because Libby first showed a 'tube valve pneumatically actuated by the introduction of a carrier adapted for use in' an open system, and added: 'To this extent it is a pioneer patent.' I can see no reason for not adopting the ordinary rule of following a well-considered decision after final hearing in another circuit upon a motion for a preliminary injunction.

"The motion is granted; the amount of bond to be fixed upon settlement of the order."

Robert Cushman, of Boston, Mass., and Cooper, Kerr & Dunham, of New York City, for appellant.

Merrell E. Clark and W. P. Preble, both of New York City, for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. [1] The opinion of the District Court states the facts with sufficient detail and to it we refer. In respect of No. 1,443,795, the critical question relates to the phrase, "a control·device external to the conduit connection," which occurs in both claims. It is quite true that this reads literally upon the defendant's machine, but the two apparatuses are so totally unlike each other that to cover the defendant's machine the words must be understood so generally as to make the invention depend merely upon the idea of putting the stopping means outside the tube. Not only is the defendant's result arrived at by totally different means, but it is a different result, because Maclaren controlled his air by stopping his motor and wholly shutting off the current, while the defendant partially chokes the tube and lets the exhaust fan run on. This, as a method to economize power, was anticipated by Stoetzel. The defendant descends from that invention; Maclaren adopts an entirely different plan. Again, in means, the defendant went to Libby, and has been enjoined from doing so, and from Libby Maclaren took nothing.

It is, as we have often said, quite impossible to lay down any objective rules, and we should be unwilling to say unconditionally that it could under no conceivable circumstances have been an invention to put outside the tube the means by which the air flow is stopped or diminished. One may imagine that an art that showed a protracted groping for such a change and an immediate response to its discovery. That was not the case. There is not a tittle of evidence to show that this, or, for that matter, any other, feature of Maclaren's machine was·ever welcome anywhere. Nor is there any reason to suppose that the location of the stopping means was other than the inevitable consequence of electrically controlling the flow of air by a "start and stop" system. We quite agree with the learned District Judge in saying that there was no invention in that.

If pressed dialectically by the words used, we should say that "means for stopping the carrier-propelling flow of air" may only mean that the flow of air was altogether stopped as Maclaren stopped it, and not merely reduced so low that it would no longer carry parcels. Literally, of course, the flow of air ceases to be "carrier-propelling" when it will not propel carriers; but the Examiner who allowed the claim, and who had before him Maclaren's machine, was almost certainly not conscious of the pregnant ambiguity which is now used to cover devices wholly different in purpose and design. We see no reason to declare claims 5 and 6 of No. 1,443,795 invalid, but they certainly are not infringed.

[2, 3] The infringement of claim 10 of No. 1,396,449 turns on the phrase, "operating means to control the pressure on said device to operate same and thereby move the valve." If the defendant's abandoned device (Fig. 2), the only one which can on any view infringe, is to be caught within this language, it must be because the element just described and that which follows coalesce, and are embodied in the parts 12 to 16 of the defendant's figure 2. Of course, it makes no difference that an infringer consolidates two features of the claim into a single part of his apparatus, and the question is whether both are in fact represented. The difficulty we find is that the "means to control the pressure" on the valve 121, so as to move it, is not the same kind of means as that which the defendant uses to move the valve, 21, which is its analogue. Maclaren had to start his air current by manual operation, because his whole system was normally inert. If a package was inserted, nothing automatically happened. It was only by opening the chamber, 125, to the atmosphere that he could establish a different pressure on the two sides of the diaphragm, 121, and this had to be done manually. This would have been as much the case, if·it had been the valve, 157, which was manually operated, as it was with matters as they stood.

Had the valve, 117, been seated so as not wholly to close the pipe, we do not see how the defendant could escape infringement, but that would have eliminated all need for .the valve, 135. The necessary changes are trifling enough, once one has determined to make that kind of machine; but that determination revolutionizes the whole plan of its operation, and incidentally makes useless the elaborate means of starting and stopping the motor. As the disclosure stands the claim does and must include the valve, 135, as a necessary element, since the apparatus would not work without it, and there can be no infringement unless the defendant uses some counterpart, which it does not. There is therefore no room for invoking the doctrine of equivalents.

Decree modified, by dismissing the bill for

lack of infringement in respect of each patent.

ROGERS, Circuit Judge, through illness, was unable to take part in the decision of this case.