266

**BRAGG–KLIESRATH CORPORATION v.
FARRELL.**

District Court, E. D. New York. April 10,
1929.

No. 3643.

Louis Prevost Whitaker and Livingston
Gifford, both of New York City, for plaintiff.

Newell & Spencer, of New York City
(Emerson R. Newell and George M. Dowe,
both of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a
suit in equity based on the alleged infringement of patent No. 1,076,198, issued by the
United States Patent Office to James T. Dickson, for vacuum brake, dated October 21,
1913, on application filed August 7, 1912;
and of patent No. 1,321,150, issued by the
United States Patent Office to Henry C. Root,
assignor to Prest-O-Lite Company, Inc., for
controlling valve for vacuum-operated power
means, dated November 11, 1919, on application filed May 9, 1917.

These patents by mesne assignments became vested in plaintiff, whose title is not
contested.

The defendant is a dealer in automobiles
manufactured by the Chandler-Cleveland
Motors Corporation, containing vacuum
brake mechanism which the plaintiff contends
infringes the patents in suit.

The defendant interposed an answer setting up the defenses of invalidity and noninfringement, and stated in its said answer
that the vacuum brake apparatus sold by it
is supplied to it by Westinghouse Air Brake
Company, of Wilmerding, Pa.

This suit is based on claims 1, 2, 3, 5, and
6 of the Dickson patent No. 1,076,198, which
read as follows:

"1. In combination an internal combustion engine having a throttle controlled intake pipe, a brake applied to a mechanism
driven by the engine, a vacuum cylinder, a
piston therein, and a pipe connection between
the manifold and cylinder.

"2. In combination, an internal combustion engine having a throttle controlled intake
manifold, a brake applied to a part rotated
by the engine, a vacuum cylinder, a piston
therein and operatively connected to the
brake, and a pipe connection between the
manifold and cylinder provided with a manually operable three way valve for controlling
the connection of the cylinder to the manifold or to atmosphere.

"3. In combination, an internal combustion engine having a throttle controlled intake manifold, a brake for the engine, a
vacuum cylinder, a piston therein, a foot
lever connected with the brake and attached
to the piston with a limited sliding movement with respect thereto, and suction connection between the cylinder and the intake
manifold between the throttle and engine."

"5. In combination, an internal combustion engine having a throttle controlled intake, a brake operating upon the engine,
vacuum operable means for actuating the
brake, and connection between said means
and the intake at a point between the engine
and throttle.

"6. In combination, an internal combustion engine having a throttle controlled intake, a brake for the engine, vacuum operable

means for actuating the brake, connection between said means and the intake at a point between the engine and throttle, and manually operable means controlling passage of fluid through said connection."

And said suit is also based on claims 2, 3, and 4 of the Root patent No. 1,321,150, which read as follows:

"2. In a vacuum operated power applying means, in combination with a cylinder and a power applying piston movable therein, means of communication between said cylinder on one side of the piston and a source of suction, valve means for controlling the suction communication to establish a vacuum on said side of the cylinder, means controlled by said valve for establishing communication between the cylinder and the atmosphere and means automatically operable by the piston for cutting off communication from the suction line to the cylinder.

"3. In a vacuum operated power applying means, in combination with a cylinder and a power piston movable therein, means for operating a vacuum on one side of said piston, valve means for controlling the creation of said vacuum and automatic cut-off valve means operable mechanically by the operating movement of the piston and between the cylinder and the vacuum creating means to proportionately interrupt the communication.

"4. In a vacuum operated power applying means, in combination with a cylinder having communication with a source of suction adapted to establish a vacuum in said cylinder, a power applying piston movable in said cylinder valve means controlling communication between said source and cylinder and between the latter and the atmosphere, means for manually operating said valve means, cut-off valve means having operative mechanical connection with the piston and controlling communication between said source and the cylinder, and means for operating said cut-off valve, means to decrease or interrupt said communication between the power applying and return actuations of the said controlling valve."

The defendant offered in evidence the following prior art patents and publications:

United States patent No. 203,224, to Wadsworth, for improvement in cut-offs, dated April 30, 1878, shows a construction involving the use of two rotary discs superimposed, which co-operate in the admission and cutting off of power for mechanical actuation purposes, the cutting off of the impelling fluid being secured by reason of the movement of the part which is actuated by such fluid.

United States patent No. 351,786, to Massey, for automatic car-brake, dated November 2, 1886, shows a suction brake in which a vacuum is maintained in a reservoir $R$ by means of an ejector or pump through the train pipe $T$ and the check valve $t$. It also shows the valve $E$ which intermittently opens and closes for suction, and the separate valve $J$ which opens and closes for releasing purposes.

United States patent No. 358,866, to Massey, for automatic valve for regulating fluid pressure, dated March 8, 1887, shows a suction brake in which when the train is running a vacuum is maintained in the case $a$ through the pipe $a^2$ which may be connected with the reservoir pump or ejector. It also shows separate suction and exhaust valves, the valves $F$ and $M$ regulating suction, and the valves $O$ and $R$ making communication with the air.

United States patent No. 530,994, to Howe and Clark, for engine for operating clutches or other devices, dated December 18, 1894, shows a pressure engine having the valve $H$ as the main valve and the valve $J$ as a follow-up valve, and the ports $4$.

United States patent No. 840,193, to Barlow, for device for operating brakes and brake rods, dated January 1, 1907, shows a suction device for operating brakes and brake rods applied to any form of vehicle, especially to a vehicle of the automobile type.

The object of the invention is to utilize the exhaust of an engine on the way to the muffler or discharge as a means for securing suction.

The disclosure is not limited to automobiles, gasoline engines, or to brakes.

The patent discloses a suction brake mechanism with a controlling three-way valve between the brake cylinder and the source of suction.

Barlow elected to utilize the exhaust from a steam engine or automobile engine for the purpose of creating suction, and did not use the direct suction of the gas engine itself as the source of suction, but the exhaust of the Barlow patent was throttle controlled.

United States patent No. 979,938, to Eiselt, for automatic emergency brake for automobiles, dated December 27, 1910, shows Fig. 4 a hand lever, $m^2$ which moves in a slot $m^3$, in the mechanism connected to the brake.

United States patent No. 983,994, to Harrington, for carbureter, dated February 14, 1911, shows how, in an engine using ker-

osene rather than gasoline, the suction from the engine manifold will lift the kerosene from a low point $U$ to a supplementary chamber, high enough to permit a supply of kerosene by gravity to the needle valve of the carbureter.

United States patent No. 984,032, to Seager, for carbureter, dated February 14, 1911, shows the utilization of engine suction to lift gasoline from a depressed main tank to a raised supplementary tank.

United States patent No. 1,036,334, to Prather, for pneumatic power transmission, dated August 20, 1912, shows at Fig. 2 the brake pedal 19 connected by the rod 27 to the brake piston 11, and also to the brake band 3, by way of the lever 5 and rod 4, and also the slotted connection at the slot 9 and pin 8, by which the movement of the foot pedal will or can apply the brakes without affecting the movement of the piston, while at the same time the piston itself is capable of applying the brake.

United States patent No. 1,082,733, to Casey and Cavin, for reversing gear for locomotives and the like, dated December 30, 1913, shows a stationary member and two movable members, one of which is a main member and the other is a supplementary follow-up or cut-off valve; and there is that opening or ports and follow-up action due to the connection of the cut-off valve with the thing that has been moved as a consequence of the movement of the original valve.

United States patent No. 1,143,034, to Brown, for positioning mechanism, dated June 15, 1915, shows a main valve $G$ controlled by the hand lever at the left. Pressure comes in at the top through the pipe $J$ and goes out through the central opening $C^3$ and with the parts in the position shown in the patent the ports $B^3$ and $B^4$ are closed by the valve $G$, and if the valve $G$ be moved to the left, the pressure will come in through $J$, enter the port $B^4$ pass to the right of the piston, and move the piston to the left, and as the piston moves to the left the supplementary valve $B$ is also moved to the left so as to cover up the port 4, and in connection with that series of movements the port $C^3$ which had also been opened to the exhaust is now covered again by the movement of the piston.

British patent No. 5,281, of 1904, to Dare, for an improved brake for motor cars or motor vehicles driven by explosion or internal combustion engines, accepted January 12, 1905, shows mechanism or device for operating the brake in or upon vehicles driven by explosion or internal combustion engine, which may be operated either by the pressure of the exhaust gases from such an engine or by a vacuum or partial vacuum which may be set up by the induction of air or gaseous mixture into such an engine or both combined. Fig. 2 shows a brake cylinder $a$ containing a piston $b$ connected to brakes by the brake rod, $h$, a connection $j$ running to the engine and a throttle valve $f^{11}$ which is controlled by the rod $g$. The device beneath the throttle valve is an air inlet, and if a gaseous mixture is utilized, then such device is the carbureter. There is thus shown a brake cylinder connected between the throttle and the manifold of the engine, so that the suction of the engine controlled by the throttle is effective in producing a partial vacuum within the cylinder $a$ at the left of the piston, so that the atmospheric pressure on the right of the piston may move that piston to the left and apply the brakes. Where suction is used, whatever passes the throttle passes through the brake cylinder.

British patent No. 5,291, of 1909, to Royce, for improvements in lubricating systems for internal combustion engines, accepted December 23, 1909, shows a device connected to a manifold of a gas engine for controlling the admission of oil for the lubrication of the engine, which device comprises a cylindrical body in which a plunger valve $C^2$ is capable of moving a short distance up and down. There is a connection to the manifold between the throttle and engine cylinders by way of the pipe $h$. When suction is admitted above the piston $b$, the piston and plungers $c^2$ are raised and the connection from the oil inlet pipe to the engine cylinder pipe $f$ is shut off. If the throttle be shut, there will be the greatest suction, the piston will be raised and the oil supply cut off, because the engine does not need it. If the throttle be opened, the pressure above the piston $b$ will be reduced, the piston drop and open the ports between the oil inlet and the oil outlet pipes $c$ and $f$.

British patent No. 18,145, of 1909, to Smith, for improvements in motor car and like warning devices, accepted May 5, 1909, shows the utilization of suction at engine's manifold for blowing a horn.

Article by Tice, in "Motor," June, 1911, entitled "'Pressure' Feed without Pressure," discloses a form of device which utilizes the partial vacuum existing in the intake manifold to suck the gasoline from the main supply tank usually placed at the rear of the car and much lower than the carbureter or auxiliary tank up into the auxiliary tank above the carbureter and hold it there ready for

supply to the carbureter according to the needs and admission of the air operation.

Article in French publication under "La Vie Automobile," January 16, 1904, discloses a valve which is controlled by the suction from the motor through a connection of the valve chamber to the manifold $T$ of the engine and between the motor and the carbureter proper. The variations in the suction of the motor varies the action upon the piston of the device which operates against the control of the spring $R$.

United States patent No. 818,967, to Jenkins, for automobile steering device, dated April 24, 1906, discloses the tank $P$, pressure tank connected with the opening $S$, and upright pipe $T$ is the exhaust. A compound form of leverage, which first uses one point as a fulcrum and then another, is shown.

A movement of the control post $G$ will result in the movement of the valve lever $K$ in one direction or the other. If this is moved to the left, around the lower pivot $L'$, it will force the valve rod $M$ to the left, will admit pressure to the left hand side of the piston $B$, and will push the piston to the right, and the air at the right will be exhausted through and out of the pipe $T$. The movement of the piston to the right will carry the rod $M$ to the right, moving the lever $K$ around the point $J$, as a fulcrum or turning point, and bring the valve into a position where the piston will remain at rest.

An examination of the prior art shows that at and before the time of the Dickson invention it was well known that suction from the exhaust or manifold of an engine was an available source of power for various purposes. And it further shows that there were well known, at and before the time of the Root invention, two easily distinguishable lines of valves, viz., the follow-up line and the nonfollow-up line.

The patentee in the Dickson patent, in the specification, describes the object of his invention as follows:

"The prime object of my invention is to provide a brake actuated by vacuum, adapted for automobiles and like uses, and it comprises a mechanism operatively connected to the intake manifold of an internal combustion engine, at any suitable point between the carbureter throttle valve and cylinders, so that the suction created by the engine when the throttle is closed may be employed for braking purposes."

The patent discloses three ways of operating the brake $24$:

One, through the foot lever $20$ connected to the brake link $23$. This is accomplished solely by muscular power used in pressing on the foot pedal which applies the brake in the ordinary manner and does not turn on the vacuum or move the piston $17$ in any way, due to the fact that the pin $21$ carried by the lower arm connected to the foot pedal can move freely in the slot $19$, and that the foot pedal $20$ has no connection with the throttle mechanism on the three-way valve $26$.

The second, by suction derived from the manifold of the engine through the pipe $25$ controlled by the throttle valve $15$ just above the carbureter $7$ and the three-way valve $26$.

The third, by the valve $26$ operated by the foot button $29$.

There seems to be no question about the following being disclosed in the Dickson patent in suit: A pivotal linkage from the hand lever $9$ on the steering wheel which will operate the throttle valve $15$, a three-way valve $26$, a slotted link $31$ which operatively connects the three-way valve with hand lever linkage, and a spring retracted foot button $29$, by which the operator can throw the three-way valve to brake applying position (because of the slot $33$), when the hand lever linkage is at any position short of the idling position, and, further, that it is disclosed in the specification that the three-way valve may be entirely omitted.

Plaintiff contends that the throttle valve is connected to the hand lever linkage by a slip connection, and defendant contends that the connection is a permanent connection, not a slip connection.

I cannot agree with the defendant's contention, because it seems clear to me that it was well known at the time of the Dickson invention that there was in each automobile, with the exception of the Ford car, a slip connection somewhere between the hand lever and the throttle valve, which valve was closed by a spring, and the patentee was not bound to set forth in detail what was the usual practice in the art. Webster Loom Co. v. Higgins, 105 U. S. 586, 26 L. Ed. 1177.

Furthermore, it seems to me that rod 31 is not one of the elements of the claims in suit, but is one of the elements of claim $4$ described as "mechanical connections between the engine throttle valve and the three-way valve," and is one of the elements of claim $7$, described as "manually operable means whereby the throttle and valve may be simultaneously operated."

Both of which claims are not in suit.

I do not agree with the defendant's contention that the Dickson brake is set by the throttle valve and can only be released by moving the throttle valve to the open posi-

tion, as I have hereinbefore shown in my description of the three ways of operating the brake, but it is a fact that in both the Dickson patent and the defendant's device the brakes can only be applied when the throttle is closed, and the closing of the throttle is a natural preliminary to the application of the brakes.

The Dickson patent in suit is not anticipated by any patent or publication of the prior art.

Barlow patent, No. 840,193, is cited by defendant as the nearest to the Dickson patent in suit, but to my mind it is entirely different, as the object of the invention as stated was "to utilize the exhaust of the engine on the way to the muffler or discharge as a means by the operation of which the brakes of such a vehicle may be actuated."

Practically no suction would be produced with the throttle closed, and only at high speed would the ejector be effective to produce suction, and with a loss of engine efficiency. The large tank *d* could not be dispensed with, as it was required to store vacuum, and without it there could be no effective braking.

Dare patent, No. 5,281, does not anticipate; the brake cylinder is directly in line of flow between the atmosphere and intake of the engine, whereas in Dickson the brake cylinder is never connected with the suction passage and atmosphere at the same time.

The other patents and publications cited as against Dickson, viz., Harrington, Seager, Royce, Smith, "Motor," and the French publication "La Vie Automobile," utilized only small power, and operated at highest demand when the throttle was open; and I cannot hold that the teachings of those patents and publications, in view of Barlow, would require only mechanical skill to substitute some other source of vacuum for the ejector of Barlow, suction of the engine having been suggested in those other patents.

The Dickson patent is not anticipated by the prior art, nor is it strictly limited to the structure shown.

The Dickson patent is operable and valid.

A comparison of the defendant's brake (Exhibit 10) with the Dickson patent in suit shows that claim 2 in suit, taken as a typical one, reads literally on the defendant's construction.

Claims 1 and 5 cover the same combination, but do not specify a valve in the suction pipe, and the patent states that the device is operable without this valve.

Claim 3 covers the same combination as claims 1 and 5, with the addition of "a foot lever connected with the brake and attached to the piston with a limited sliding movement with respect thereto."

Claim 6 specifies more broadly the manually operable means for controlling the passage of fluid through the suction connection.

All the claims of the Dickson patent in suit are infringed.

The Root patent, No. 1,321,150, shows a main valve *12*, and a supplementary valve *19*, *21*, operated by his piston, which "follows up" the movement of valve *12* and cuts off the suction.

If the valve *12* is moved somewhat further, it reapplies the suction, causes the piston to move still further, and the "follow up" valve moves just sufficiently to cut off the suction again. The movement of one is "proportionate" to that of the other.

It is the "follow up" valve that enables Root to accomplish the successive increments of brake pressure by moving valve *12* or the lever connected thereto in one direction only, and it is a necessity in his structure.

Defendant does not need it, and has no such construction.

Defendant's valve *A* moves in one direction to open, and in the other direction to close, and opens and closes in this manner for each successive increment of pressure, and has no "follow up" valve.

As I said with reference to the examination of the prior art, there are two lines of valves; the "follow up" valve of Wadsworth, Howe and Clark, Casey and Cavin, and Brown, in which line the Root valve should be placed, and in the second, "nonfollow up" valves of Massey, 351,786, Massey, 358,866, and Jenkins, in which line the defendant's valve should be placed.

Of course, the foot brake lever of an automobile should move continually in the same direction to obtain successive increments, and this movement is common to both Root and defendant, as is likewise the result, but the means employed are entirely different.

The claims of the Root patent do not even read on the defendant's structure.

█ This is fatal to plaintiff's contention, as it is the claim that defines the patentee's invention. White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Heitler v. Brooklyn Shield & Rubber Co. (D. C.) 295 F. 333, 337.

█ It appears to me that plaintiff is attempting to claim the result, but this is contrary to the decisions, which hold that the function of a machine cannot be patented. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136.

█ Root's claims do not cover every device

which had an automatic cut-off of the suction. If they did, the patent would be invalid, in view of the prior art.

Each of the Root claims in suit is for a combination, and, if an essential element of such combination is not found in the defendant's structure, it does not infringe.

Claim 2 requires that the same valve means which connect the cylinder to vacuum shall connect it to atmosphere, also a separate cut-off valve.

These elements are not found in defendant's device.

Claim 3 requires a cut-off valve separate from the main valve, and that this move proportionately to it.

These elements are not found in defendant's device.

Claim 4 requires a separate cut-off valve which moves between the opening and return movements of the main valve.

These elements are not found in defendant's device.

Root's patent in suit is valid, but the defendant does not infringe.

A decree may be entered as indicated herein, but, as both plaintiff and defendant have won, in part, it must be without costs, but with an injunction in favor of plaintiff as to the Dickson patent in suit, and with the usual order of reference.