### BRAGG-KLIESRATH CORPORATION v. WALTER S. VOGEL & CO., Inc.

#### No. 6524.

District Court, E. D. New York.
May 3, 1933.

Motion Denied May 22, 1933.

Louis Prevost Whitaker and Livingston Gifford, both of New York City, for plaintiff.

Albert F. Nathan, of New York City (Nathan, Bowman & Helferich, Border Bow-

man, and Elmer R. Helferich, all of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit in equity for the alleged infringement of patent No. 1,321,150, issued to Howard C. Root, assignor to the Prest-o-Lite Company, Inc., for controlling valve for vacuum-operated power means, granted November 11, 1919, on an application filed May 9, 1917.

The defendant has by answer interposed the defenses of invalidity and noninfringement.

The plaintiff has title by mesne assignments to the patent in suit, and notice was given to the defendant.

The plaintiff is a corporation organized and existing under the laws of the state of New York, with its factory and principal place of business at South Bend, Ind., and engaged in the manufacture and sale throughout the United States of vacuum brakes for automotive road vehicles, under the Root patent in suit.

The defendant is a corporation organized and existing under the laws of the state of New York, with its principal place of business at No. 3104 Northern boulevard, Long Island City, within this judicial district, in which district the alleged acts of infringement were committed.

The defendant is a distributor of the alleged infringing vacuum brake apparatus, which apparatus, sold by the defendant, is known as the Besler vacuum brake, and is manufactured by Engineering Productions, Inc., of Emeryville, Cal., and distributed for the entire United States by Lathan Company, Incorporated, of San Francisco, Cal.

The patent in suit was adjudicated in this court in the action brought by the plaintiff on both the Dickson patent, No. 1,076,198, and the patent in suit, in Bragg-Kliesrath Corporation v. Farrell (D. C.) 32 F.(2d) 266, and affirmed by the Circuit Court of Appeals of this circuit, 36 F.(2d) 845.

In the case last cited, the District Court held the patent in suit valid but not infringed. This was affirmed on appeal by a majority of the Circuit Court of Appeals; Circuit Judge Learned Hand, in a dissenting opinion, holding claim 2 of the patent in suit also infringed.

The patent in suit has had great commercial success.

The plaintiff's predecessors Fisher and Allison first operated under the Dickson patent, supra, which called for an "additional and somewhat delicate movement" releasing the "foot button or hand throttle lever" in order to hold the brakes "after being slightly applied."

The patent in suit is an improvement to overcome that shortcoming of Dickson.

Circuit Judge Mack, on said appeal, at page 847 of 36 F.(2d), after describing the operation of the Dickson patent No. 1,076,-198, said:

"In the Dickson device the brakes could not be held, after having been slightly applied, unless the three-way valve was returned a short distance toward the open position, thus cutting off both the suction and the air from the brake cylinder, and thereby holding the piston in the position to which it had been moved. This required that the foot button or hand throttle lever be slightly released by the operator every time he desired to hold the brake. Root's patent eliminated this additional and somewhat delicate movement by providing a valve which was automatically closed by a movement of the piston, and which held the vacuum until the suction was again introduced or air admitted to the brake cylinder. This result was achieved by using a follow-up element, 21, which was actuated by the piston itself, through a lever 22, so that when the suction was introduced and the piston moved, it automatically moved the follow-up slide to cover the suction aperture and hold the brake. Any additional movement of the foot button or hand lever (which are not shown by Root but which are adaptable to his device) would repeat this operation until the maximum braking effect had been obtained."

The instant suit is based on claims 1, 2, 3, and 4 of the patent in suit, which read as follows:

"1. A valve mechanism for fluid medium operated power applying means having a manually controlled valve member operable to control the communication between the source of power and the said means, and between the same and the atmosphere and a supplementary automatic cut-off valve member associated with the first valve member and operable immediately of the power applying and return actuations of the manually controlled valve, to cut off the communication between said source and power means.

"2. In a vacuum operated power applying means, in combination with a cylinder and a power applying piston movable therein, means of communication between said cylinder on one side of the piston and a source

of suction, valve means for controlling the suction communication to establish a vacuum on said side of the cylinder, means controlled by said valve for establishing communication between the cylinder and the atmosphere and means automatically operable by the piston for cutting off communication from the suction line to the cylinder.

"3. In a vacuum operated power applying means, in combination with a cylinder and a power piston movable therein, means for operating a vacuum on one side of said piston, valve means for controlling the creation of said vacuum and automatic cut-off valve means operable mechanically by the operating movement of the piston and between the cylinder and the vacuum creating means to proportionately interrupt the communication.

"4. In a vacuum operated power applying means, in combination with a cylinder having communication with a source of suction adapted to establish a vacuum in said cylinder, a power applying piston movable in said cylinder valve means controlling communication between said source and cylinder and between the latter and the atmosphere, means for manually operating said valve means, cut-off valve means having operative mechanical connection with the piston and controlling communication between said source and the cylinder, and means for operating said cut-off valve, means to decrease or interrupt said communication between the power applying and return actuations of the said controlling valve."

The patent in suit shows a main valve 12, and a supplementary valve 19, 22, operated by a piston which follows up the movement of valve 12 and cuts off the suction.

If the valve 12 is moved somewhat further, it reapplies the suction, causes the piston to move still further, and the follow-up valve moves just sufficiently to cut off the suction again. The movement of one is proportionate to that of the other.

■ Although it seems to me that defendant does not contend that the patent in suit, as construed by this court and the Circuit Court of Appeals, is invalid, it introduced the alleged prior art patents with a view to limit the construction of the claims of the patent in suit so as not to cover defendant's structure, I will now consider the prior art at some length.

*Patent No. 88,431, to Atkins.*—This patent has for its stated purpose, with others, operating the rudder to steer a ship, handling heavy guns and other ponderous masses, controlling the link motion of steam engines, operating iron planing machines, and controlling throttle valves of steam engines. It is to be operated by pressure. The piston is stationary, held to the frame of the machine, the cylinder moves, and there is a piston valve at the top.

From the drawings it appears that the width of the laps in the piston valve is exactly the same as the width of the port; thus there is no overlap. The device is on unstable equilibrium, the slightest movement one way or the other would admit air or steam, or whatever was operating it. If moved one way, that would change the opening of the ports to the other side, and so on.

Unless there is some lap, a device of this kind becomes unstable and would be unsatisfactory for use for the purposes of the patent in suit.

Disregarding that for the moment, a movement of the hand lever L in one direction or the other opens the port on one side to the pressure, and the port on the other end of the cylinder to exhaust, and vice versa, so that the cylinder moves up and carries the valve chamber along with it, and closes those ports again. If the cylinder itself is moved, due to any cause, when the ports are closed, such, for instance, as if it was connected in the brake system of an automobile, then of course it would reconnect one side or the other to the atmosphere, assuming we were working it some way with vacuum, or, if it was with pressure, it would exhaust the pressure side to the air and the braking would be lost again. That is the way it is intended to work. The possibility of using it with water is mentioned, and with water it would be possible to bring it up to a state of equilibrium and hold it there, but that would not be possible with an expansive fluid.

The device therefore is not suitable for use as a source of power to apply brakes in an automobile.

*Patent No. 203,224, to Wadsworth.*—This patent was considered in the prior litigation and needs no extended consideration here,, as there is no provision made to prevent loss of pressure due to the motion of the piston rod, and it seems to me that the mechanism would not be suitable for automobile use, if it could in any way be adapted for the purpose of applying brakes.

*Patent No. 231,258, to Batcheler.*—This is a vacuum and air pressure system all combined for operating the brakes of a railroad car. I have some doubt as to the patent operating as described, but, even if it would, it seems to me to have no bearing on the patent in suit. There is no follow-up, and the vacuum or the air as may be used to move the cylinder is regulated by the engineer, by an ordinary engineer's valve. This is not in accord with the disclosure of the patent in suit.

*Patent No. 530,994, to Howe and Clark.*—This is a device for operating clutches and other devices, and shows the usual type of these steam power cylinders, which are manually controlled, and is unsatisfactory for automobile brake use.

This patent was also considered in the prior litigation.

*Patent No. 578,602, to Goodwin.*—This patent shows a vacuum brake for a railroad car. The car is provided with a vacuum pump, operated by an eccentric mounted on the car wheel shaft, which pump can be connected by a three or four way valve to a pair of tanks, so that the air can be exhausted from them to give a vacuum reservoir, or, by the same valve, it can be connected directly to a vacuum cylinder, which is of the diaphragm type in the case of the cylinder applying the brakes, and of the ordinary cylindrical cylinder and piston type in the case of a cylinder which is also attached to the car, for dropping and raising a fender to pick up people who happened to be on the track. There is no connection between the application of the brakes and the closing and opening of any valve which controls the flow of air out of or into the cylinder, that is manually controlled by the motorman from his end of the car. The patent proposes to have a somewhat graduated application of the brakes by bleeding in a certain amount of air through this valve into the system when the valve is connected with the vacuum tanks, and thereby reduce the vacuum. This would be an impractical method to apply on an

automobile power brake system, as it would mean continual leaking of air into the manifold through small orifices, whereas in vacuum brakes on automobiles there must be a fairly large passageway to the manifold, so that the brake cylinder can be exhausted quickly.

*Patent No. 773,365, to Atkins.*—This patent shows the usual power cylinder and piston valve to control it manually. It works by pressure, and is double-acting. It is a common construction of piston and cylinder. There is nothing novel or peculiar about the construction. There is no relation between the movement of the piston and the movement of the valve, and no way of preventing the movement of the piston from opening the cylinder to atmosphere and exhausting it and losing the pressure.

This is not a satisfactory structure for operating automobile brakes.

*Patent No. 959,417, to Anderson.*—This patent has the usual type of cylinder and piston and is double-acting.

In Fig. 3 the piston valve is shown within the main piston. In Fig. 6 the control valve is shown as a slide valve mounted at one side of the cylinder. In Fig. 1 the control valve shown in Fig 6 is shown connected to an automobile for controlling the steering gear of the car, and the piston rod moves and is connected to the steering knuckle of the wheels, and that piston rod through an extension carries the valve connecting to one side or top of the cylinder. The slide valve is connected to a little piston rod, which is manipulated through rack and gear by the steering handle of the automobile, and that moves the slide valve one way or the other, uncovering the inlet ports on one side or the other, and the exhaust port in the middle.

There is no lap to this valve, and the piston will follow the motion of the valve, and, if it overruns, then the pressure and exhaust relations are reversed, and so on. There is no connection between the piston and the valve itself. The piston cannot be prevented from opening the valve to the exhaust and relieving the pressure at that particular side, reversing the motion.

It would not be satisfactory for automobile braking service.

*Patent No. 1,076,198, to Dickson.*—This patent was the subject of the prior litigation, and fully discussed. It shows a vacuum power system applied to the operation of an automobile; the vacuum being obtained from the manifold of the engine. It lacks the progressive application of the brakes, and must be

manipulated just as an engineer's valve is manipulated in a locomotive.

It is difficult to handle, but further consideration seems unnecessary, as the patent in suit is an improvement of that particular device and mode of operation.

*Patent No. 1,082,733, to Casey and Cavin.*—This patent was discussed in the prior litigation. It represents a rather large group of devices for use in reversing the valve gear of locomotives, large ones in particular.

There are two types of valves, both of them operating the same way and being equivalent. One is a piston valve; the other is a rotary disk valve.

It will be sufficient to refer to the disk type of valve only. Fig. 2 shows a plan view of the casing itself, with the ports in the bottom, and the connections 21 and 22 to the two ends of the cylinder, which is a double-acting cylinder, and the piston is moved one way or the other by steam or compressed air, as may be desired. Fig. 4 shows a disk 29 which is mounted on top of the valve seat in the casing, which rotates by a lever 19, connected to and controlled by the piston.

The engineer, by the movement of a hand lever, controls another disk 28; the arrangement being such that the hand lever is turned and the top disk rotated slightly so as to permit steam to enter in one side, through ports passing through the disk 29, and then the exhaust to come out from the other side through similar ports in that same disk. The movement of the piston turns the disk 29, and those ports are closed off again, and so on. There is a lap over the ports so the structure could take a position and stay there; but there is no arrangement whereby movement of the piston itself would not uncover the opposite port and reverse its movement, and so on.

This is the intention of the patentee, as shown by the patent.

The patent is unsatisfactory for use as a power source for automobile brakes.

*Patent No. 1,208,554, to Helmholtz.*—The patent shows another power device for operating the valve gear of locomotives, and has the cylinder with piston which operates with compressed air or steam, and the movement of the piston throws the linkage to one side or the other, for going ahead or reversing the direction of motion of the locomotive. A rotary disk type of valve is provided to control the steam inlet and outlet at the two ends of the cylinder, and consists of a pair of disks rotating and resting upon a valve seat in the casing itself. There is also a valve 35 which rests upon the valve seat, and another valve 43, which rests on top of valve 35. A lever, 42, operated by the engineer, is connected to the stem of the valve 35. A lever 52 is connected to a rod 51, which in turn is connected to the piston.

In rotating valve 35 there are uncovered ports which admit steam into one end or the other of the cylinder, and in the opposite end let the steam exhaust.

There is also a little brake which locks the piston rod in any given position.

The piston is definitely held in its stop position wherever it may be if the steam is cut off from either end of the piston.

That would not be satisfactory in the case of the application of brakes to an automobile, as the brake rods move back and forth, and, if the piston was held from moving rapidly, the brake rods would be broken by the motion of the axles and the torque of the axes under the application of the brakes. Further, if the piston were permitted to move under the action of the brake rod, the ports would be reconnected to steam on one side, and exhaust on the other, and vice versa, depending on the motion, and thereby the brakes would be relieved or applied more strongly, and that could not be applied to an automobile.

*Patent No. 1,224,621, to Fellmeth.*—The patent shows a power mechanism for applying a friction clutch or similar device to a hoisting engine. Two forms are shown, and in both cases the piston is a double-acting piston and is pressure-operated by steam. The movement of the piston is controlled by an ordinary slide valve which can be moved manually one way or the other, so as to let steam into one end or the other of the piston, as desired, and connected at the same time at the other end to the exhaust. The motion of the piston is caused by what is commonly called a floating lever mechanism.

If the piston moves beyond its normal position as corresponding to the position of the valve, the valve is moved off the ports, so that steam is admitted to the opposite side of the piston, and it is moved back again.

There is no connection between the movement of the piston and the manual movement of the levers. This would be unsatisfactory for automobile braking, as the movement of the piston would release the brakes or apply them more strongly.

*Patent No. 1,258,337, to Imblum.*—The patent shows a power cylinder and "relates generally to controlling mechanisms for re-

versing gears, steering gear shifts, and other parts of this general nature." The invention is illustrated in connection with a locomotive reversing gear.

The power cylinder is shown connected to the air reservoir of a locomotive, is double-acting, contains the usual piston, and is operated by fluid pressure, which would be steam or compressed air. The valve casing is mounted upon the piston rod so that it moves with it. The valve is controlled by a hand-operated pull device. Without going into any detailed description, it is sufficient to point out that any movement of the piston rod will uncover the ports so that steam will come into the opposite side and cause the piston to move again, and vice versa.

There is no connection between the movement of the piston itself and the movement of the hand-operated pull rod 37, and, if such a device was applied to an automobile, it would immediately cause a release of the braking under the action of the movement of the wheels and the springs, and would be undesirable.

*Patent No. 1,302,738, to Wallmann.*—This patent shows a power brake for automobiles; the piston being operated by a vacuum taken from the manifold of the engine. The device is inoperative as far as a progressive application of brakes is concerned or progressive relief. It is unnecessary to go into any detailed discussion of the operation of the device; it being sufficient to say that the method of regulating the vacuum in the piston, and thereby the pressure on the brakes, is to regulate the opening of the valve 10 by the position of the piston, and by the compression of the spring 12 upon it; the idea being to allow a leakage of air into the vacuum space, and thereby reduce the vacuum.

As I have hereinbefore explained with reference to Goodwin patent, No. 578,602, this method of controlling the vacuum would be impracticable and impossible to carry out in connection with an automobile engine. It would also be impracticable to apply this patent to an automobile because of the holding of the piston positively, the complicated valve mechanism for controlling the ports on the one hand, and the lock on the other hand, and also because there is no method of connecting the motion of the piston to the motion of the valve in any way, so that the movement of the brake rods would be compensated for.

*Patent No. 1,495,081, to Kramer.*—This patent shows a power apparatus used for the purpose of applying brakes in an automobile; the piston being operated by the vacuum taken from the manifold. It does not seem necessary to describe the operation of this patent in detail; it being sufficient to understand that there is no follow-up connection between the piston and the movement of this valve, so that the ports will be maintained in their closed neutral position under motion of the brake rodding. There is, however, a connection between the back of the cylinder and this valve, so that any pressure variation in the cylinder, due to the movement of the brake rodding, would be transmitted to the valve, and thus would tend to make the valve move up and down in accordance with this variation of pressure, causing the uncovering of the ports to the air, or the admission of additional vacuum to the cylinder, so that the effect upon the valve would just be the opposite of that desired. The foot pressure would be maintained in equilibrium, that is, a constant pressure, just as is applied to the brake pedal to hold constant braking, and consequently, under the action of this variation of pressure above the piston, which would be transmitted through the spring to the foot, the foot would be caused to move back and forth, or up and down, but this motion would not maintain the valve in overlapped condition, because the valve casing itself, with the ports, would remain stationary, and would not be subjected to this movement.

This device lacks the simplicity of the direct follow-up valve of the patent in suit, and involves the construction of delicately balanced pistons which in practical use are difficult to maintain in operative condition, are more complicated, and are more or less expensive to manufacture.

*British patent No. 3,660, of 1887, to Redfern.*—This patent shows a power cylinder applied to several uses; one of them being for the purpose of operating valve gear, another for operating a governor, and another for operating hoisting engines.

The power cylinder is double-acting and controlled by an ordinary slide valve, the motion of which is controlled by the usual type of floating lever, which in this case takes the form of a pair of eccentrics.

Without a detailed description of the operation, the result is that the valve is first moved to uncover the port, and then the motion of the piston recovers it again in the usual method which takes place with the ordinary floating lever. There is no connection between the movement of the piston and the movement of the valve, so that the movement of the piston would keep the valve ports cov-

ered. On the contrary, it would not be, and I do not consider the device suitable for application to an automobile braking system.

Although I have briefly described the disclosure of each of the prior art patents offered in evidence, it seems to me that defendant's expert has eliminated all but Dickson, No. 1,076,198, Kramer, No. 1,495,081, and Wallmann, No. 1,302,738; and as to them he admitted that in none of them is there any portion of the value mechanism mechanically connected with the brake piston. There is no follow-up valve element in any of these three patents.

There is nothing shown in the prior art to limit the construction placed on the patent in suit, specification, and claims, by the Circuit Court of Appeals of this circuit, and this court.

The patent in suit is valid.

We now come to the question of infringement.

In the defendant's apparatus we find the following:

The same valve means which connect the cylinder to the vacuum connect it to the atmosphere. It has a separate cut-off valve which moves proportionately to the main valve. The valve which is operated by the piston follows up the main valve and cuts off suction. If the main valve moves somewhat further, it reapplies suction, causes the piston to move still further, and the follow-up valve moves just sufficiently to cut off the suction again; the movement of one being proportionate to the other. In producing the successive increments of braking pressure, the main valve, or a lever which operates it, is moved progressively in one direction to apply progressive pressure. The separate cut-off valve moves intermediate the opening movement of the main valve and the return movement to its initial position. It is never necessary to make a return or retrograde movement of the pedal or lever, which operates the main valve for the purpose of locking the vacuum. It is locked by the follow-up movement of the valve casing, caused by the movement of the piston. The valve 12 cannot be operated by any other part than the pedal.

The infringement of the patent in suit by the defendant's device appears to be established, but defendant relies upon some points which seem to be immaterial.

Defendant's main contention appears to be that its valve mechanism operates in the same manner as the prior art positioning devices, and that overmovement of the brake piston will cause the follow-up valve member to reconnect the brake cylinder with atmosphere and release the brake mechanism.

That contention was not sustained, for the reason that, in the defendant's device, movement of the rodding cannot connect the brake cylinder with the atmosphere and release the brakes, due to a compression spring placed between the valve casing on the one hand and the piston on the other, and the brake after once being applied will not be released until it is intentionally released by the return movement of the foot lever.

If the defendant's device would, under the action of movement of the rodding, reconnect the brake cylinder with atmosphere and release the brakes, it would be unsafe and unsatisfactory.

The contention of the defendant was not sustained by its expert's operation of Defendant's Exhibit H.

The brake mechanism in such exhibit was placed in a position where it could not be operated by the foot. It was operated by defendant's expert, by placing his hand on the pedal, while standing on the forward side of the foot lever. No gauge was placed on the cylinder on such exhibit, and no information was available from such expert as to the amount of suction which the pump was capable of producing. The manually operated valve member of such Exhibit H was shorter than in the stipulated and other specimens of defendant's commercial valve in evidence, and such valve member had the end next to the vacuum port somewhat rounded, the effect of which was to shorten it still further, so that the valve member, in median position, could not simultaneously close both the air inlet port and vacuum port. This description is not to be construed as suggesting that defendant's expert or counsel deliberately altered the condition of the alleged defendant's device, to make it less efficient or unworkable, but, as it was but an experimental device, the effect of the change may have been overlooked, but the fact remains that in my judgment Exhibit H would commercially prove inoperative unless it adjusts itself to the Root concept.

The criticism of the patent in suit by defendant's expert, for alleged inoperativeness based on the drawings thereof is as follows:

(1) That upon releasing the pedal the valves as shown in the Root patent will cause a reconnection of the cylinder with suction, before it connects the cylinder with atmosphere to release the brakes, does not seem to me to be sustained, as patent drawings do not

represent working drawings, but are intended to convey the idea of the inventor, or as an aid to disclose the invention to those skilled in the art, and it was shown that Root made a vacuum brake mechanism corresponding to the drawings of the Root patent, and embodied it in a Ford automobile, in the early part of 1917, before the application for the patent was filed, which was successfully operated on the streets and on the speedway at Indianapolis.

When properly connected with the brake mechanism, reconnection to suction does not occur unless the manually operated valve member is moved to such an extent as to fully apply the brakes, and in such case, the full force of the vacuum being applied, a reconnection to vacuum on the releasing movement of the manually operated part would have no effect whatever.

The further criticism of the patent in suit by defendant's expert:

(2) That the Root construction will not give a graduated release of the brakes does not seem to me to be of moment, as plaintiff's expert shows that, if the Root valve is connected to the pedal, which also applies physical force to the brake, in the manner known in the art at the time of the Root invention, and represented in this case by the patent to Christensen, Exhibit 38, the movement of the manually operated valve part into brake applying position occurs during the movement of the brake shoes from their retracted positions into contact with the brake drum. After the brake shoes contact with the brake drums, very little movement of the brake shoes occurs, but the pressure exerted by the shoes upon the drum is built up. Consequently, the slightest release of the brake pedal, in any braking system, will relieve this built-up pressure and substantially release the brakes, unless the pressure is reapplied. Therefore the fact that a graduated release of the brakes is not provided for in the construction illustrated in the Root patent drawings in no way detracts from the efficiency or operativeness of the Root brake mechanism.

If defendant's device contributed anything to the art, it would be merely an improvement, and would not relieve from infringement, but I have found no such contribution.

The defendant's expert noted that in defendant's device the physical force of the operator can be exerted to apply the brakes by the same lever which operates the valve mechanism to apply the brakes by power; but this represented no contribution to the art, as it was old prior to Root's patent, and was also found in plaintiff's commercial brake mechanism.

The patent in suit mentions "a suitable operating handle or pedal," leaving it to the operator to connect the valve or pedal in any way known to the art, and, in view of the Christensen patent, it was not necessary to illustrate or describe it.

The prior art considered in Bragg-Kliesrath v. Farrell, supra, and the instant suit, establishes the entire equivalence of the following parts:

Valves, Rotary or Reciprocating or Slide

Two part or Three part
Stationarily Mounted or Floating.

Therefore the presence of one or the other of these types in the patent in suit, and of another of these types in the defendant's device, has no bearing on the question of infringement.

■ The making of a device of one or more parts to perform the same function in substantially the same way as a patented device comprising a different number of parts does not avoid infringement. Arthur Colton Co. v. McKesson & Robbins (C. C. A.) 58 F.(2d) 157; Cincinnati Car Co. v. N. Y. Rapid-Transit Corp. (C. C. A.) 35 F.(2d) 679; Lamson Co. v. G. & G. Atlas Systems (C. C. A.) 14 F.(2d) 22.

■ The reversal of stationary and movable parts does not avoid infringement. Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict (C. C. A.) 151 F. 585.

It is the follow-up valve that enables the patent in suit to accomplish the successive increments of brake pressure, by moving valve 12 or the lever connected thereto in one direction only, and it is a necessity in that structure.

Claim 1 requires a "supplementary automatic cut-off valve member associated with the first valve member."

This claim was obviously intended to cover a valve mechanism for a suction-actuated brake cylinder having the Root characteristics, without including the brake cylinder and piston.

Claim 1 was intended to apply to the valve mechanism for controlling the suction-operated brake cylinder of the Dickson patent. The entire specification makes it clear that nothing but suction or vacuum-controlling means was contemplated, and this claim emphasizes the fact that Root's conception of his valve was a two-part valve, the manual-

ly operable main valve and the piston actuated follow-up valve member.

This claim reads literally on defendant's device, and construed in accordance with the specification of the patent in suit, as interpreted in prior decisions, it infringes.

█ The claims of a patent are to be construed in the light of the real invention, as shown and described in the drawings and specification. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136.

Claim 2 requires that the same valve means which connect the cylinder to vacuum shall connect it to the atmosphere, also a separate cut-off valve.

In the defendant's device the manually operated valve member connects the cylinder to vacuum and also to atmosphere, and there is a separate cut-off valve moved by the piston in the same direction as the manually operable valve member which it follows up to lock the vacuum. See Plaintiff's Exhibit 19.

Claim 3 requires a cut-off valve separate from the main valve, and that this move proportionately to it.

In the defendant's device the cut-off valve is separate from the main valve and moves proportionately to it. See Plaintiff's Exhibit 19.

Claim 4 requires a separate cut-off valve which moves between the opening and return movements of the main valve.

In defendant's device the separate cut-off moves between the opening and return move-

ments of the main valve. See Plaintiff's Exhibit 19.

These claims read literally upon the defendant's device, and the defendant's device contains every element of the combinations recited in these claims, and further contains what the Circuit Court of Appeals, in Bragg-Kliesrath Corporation v. Farrell, supra, defined as the characteristic feature, or, in other words, the teaching of the Root patent in suit.

█ These claims of the patent in suit, on which the suit is based, are infringed.

The plaintiff is entitled to a decree against the defendant for an injunction, with damages and costs, and the usual order of reference.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by Equity Rule 11 of the rules of this court.

Settle decree on notice.

### On Motion for Order Staying Issuance of Injunction.

Defendant moves for an order staying the issuance of the injunction provided for in the decree herein and further proceedings during the pendency of an appeal to be taken herein.

█ There is no showing that any possible damage will come to the defendant by the granting of the injunction, as it is not the manufacturer but only a seller of the manufactured article in very small quantities, some time since, and it appears by the affidavit of John A. Haag, treasurer of Fink, Dumont, White, Inc., the company which sold valves and chambers to the defendant, that he does not know where said Walter S. Vogel now is.

The only purpose in seeking the stay, that I can see, is to use that stay as an argument against the granting of a preliminary injunction in cases against the alleged infringers that plaintiff may institute.

Any bond that might be required or given in this case would not be of any protection to the plaintiff in view of the very small sales made or anticipated by the defendant, but there are others who will probably make large sales, such as the distributors, and any bond given in this case will be no protection to plaintiff against such sales.

Any claim made herein that damage will come to Lathan Company, Inc., by the granting of the injunction herein cannot properly be urged here, as that company is not a party to this suit, nor did it come in and defend,

nor would plaintiff by any bond given herein be protected against any sales made by said Lathan Company, Inc.

Had that company come in and announced that it assumed the defense of this suit, and been bound by the decree, a very different question would have been presented, if it was sought to stay the injunction.

Motion denied.