## GIBBS v. TRIUMPH TRAP CO., Inc.

Circuit Court of Appeals, Second Circuit.
May 21, 1928.

No. 231.

1. Patents ⊜243(1)—Combination of elements of claim of patent does not avoid infringement, if function of two elements is performed in identical manner.

One does not escape infringement by combining into one element what claim of patent specifies as two, provided the single element performs the function of both in same way.

2. Patents ⊜328—No. 1,333,017, claim 10, for animal trap, held valid and infringed.

Gibbs patent, No. 1,333,017, claim 10, for double animal trap having fixed and movable jaw, *held* valid and infringed.

3. Patents ⊜226—Infringement is not avoided by imperfectly practicing invention.

One does not escape infringement by practicing invention imperfectly.

4. Patents ⊜118—Where two patents were pending at same time, it is immaterial that invention of claim of one patent was disclosed in specifications of other.

Fact that invention of claim of patent may have been disclosed in specifications of another patent is irrelevant on question of patent's validity, where both patents were pending at the same time.

5. Patents ⊜328—No. 1,458,286, claim 4, for animal trap having simultaneous locking of jaws, held valid and infringed.

Gibbs patent, No. 1,458,286, claim 4, for animal trap having simultaneous locking of main and auxiliary jaws, *held* valid and infringed.

Appeal from the District Court of the United States for the Northern District of New York.

Action by Walter A. Gibbs against the Triumph Trap Company, Inc. Decree for plaintiff, and defendant appeals. Affirmed.

Appeal by the defendant from a decree of the District Court for the Northern District of New York holding valid and infringed

claim ten of patent 1,333,017, and claim four of patent 1,458,286, both issued to W. A. Gibbs.

Both patents, which were copending in the Patent Office, are for animal traps, operating by means of the usual spring actuated jaws, but with certain additions alleged to be patentable improvements. The first patent discloses a primary pair of jaws beneath which, when they are opened, a secondary jaw is so set as to swing in a plane at right angles to the motion of the primary. This secondary jaw is actuated by a separate spring, and when released by the struggles of the animal pulling away from the primary trap, it swings over the closed jaws through one hundred and eighty degrees and catches the body between itself and a fixed horizontal jaw which extends outside the primary trap. The animal is thus doubly secured, first by the primary trap which holds one of its legs, second by the secondary jaw which holds his body between itself and the fixed jaw and prevents his pulling out, or gnawing off, his leg.

Claim ten reads as follows: "A double animal trap comprising a primary trap and an auxiliary trap having a fixed and a movable jaw, the movable jaw of said auxiliary trap in its action of closing swinging over said primary trap."

The second patent is for a trap of the same general kind and for novelty in disclosure relates to the "simultaneous" locking of the main and auxiliary jaws. In the first patent after the primary jaws close the secondary jaws still remain open until in struggling the animal loosens a latch which holds down the secondary jaw which then is sprung. This operation is disputed and the issue is discussed in the opinion. The secondary jaw of the second patent is held by two means which need not be both employed. The first of these is a lug on one of its sides which engages the under side of one of the primary jaws so that when these are sprung the secondary jaw follows up with them, until they sweep clear of the path of the lug, when the secondary jaw is free to snap over. The second the patentee describes as a "retarding means," and it delays the springing of the secondary jaw until there is a firm seizure of the animal's leg by the primary jaws. This is accomplished by a pivoted latch which extends over the end of the secondary jaw, holding it in place. The end of this latch fits under one of the primary jaws but close to its pivot point, so that the latch will not be released until the primary jaws have nearly, if not quite, closed, at which time the animal's leg is firmly caught.

Claim four reads as follows: "An animal trap having in combination pivotally mounted main jaws, a pivotally mounted auxiliary jaw the pivoted axis of the auxiliary jaw being at an angle to the axis of the main jaw and movable through an arc greater than ninety degrees, resilient means for shifting the main jaws, and the auxiliary jaw, a treadle and means controlled by the treadle for simultaneously locking the main and auxiliary jaws in open position."

The infringement is a trap which has the usual pair of primary jaws actuated by a U-spring which is normally in line with their axis but can be twisted to either side. One end of this spring rides up on the shanks of the primary jaws as they close in the fashion usual in such traps. A secondary jaw swings over the primary trap through an angle of nearly one hundred and eighty degrees until stopped on the other side by this spring, which acts as a fixed jaw. In open position the secondary jaw is held down by the two jaws of the primary trap whose closure allows it to be sprung. Both primary jaws and secondary jaw are thus held open by one latch and treadle.

Charles H. Wilson and Louis Marshall, both of New York City, for appellant.

Howson & Howson, of New York City (Charles H. Howson, of New York City, and Kennard N. Ware, of Philadelphia, Pa., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1, 2] We do not think that there is any prior art relevant enough to the first patent to require discussion except Willing, 616,172. Verbally claim ten is distinguished from it, because both its secondary jaws were movable; functionally it was different because the secondary jaw did not sweep the animal out of balance and clutch its body between itself and a horizontal fixed jaw. Though Willing's two traps made separate grips, the second would ordinarily clutch the leg which was caught by the first. Even when the higher grip extended to a part of the body the animal was free to pull out if he could.

Indeed, the only defense worth the name to the first patent is that of non-infringement and this appears to us only verbal. The argument is that as the spring of the primary trap in the alleged infringement acts as the "fixed

jaw," an element is omitted from the claim without which it is not satisfied. Were it not for the fact that in the defendant's trap the spring can be twisted to one side, so as perhaps at times not to act as a fixed jaw when the animal approaches from the other side, this would be a trivial contention. When set in line the spring performs all the offices of a fixed jaw, though it also performs the office of a spring. It is settled law, and it is good sense, that one does not escape infringement by combining into one element what a claim specifies as two, provided that the single element performs the function of both in the same way, Bundy v. Detroit Time-Register Co., 94 F. 524, 538 (C. C. A. 6); Pedersen v. Dundon, 220 F. 309 (C. C. A. 9); Proudfit, etc., Co. v. Kalamazoo, etc., Co., 230 F. 120, 138, 139 (C. C. A. 6). In Underwood Typewriter Co. v. Royal Typewriter Co., 224 F. 477, 479, we declined to apply this doctrine in the case of an overcrowded art, where apparently it was necessary to restrict the claims if they were to be valid at all. Courts do indeed treat the language of claims plastically, now stretching to save the whole scope of the invention, now squeezing to limit the claim so that it can survive. There are no absolutes; when justice requires, it is a question of filling the language as full as it will bear without bursting, or of pressing it so long as it will not quite break, though of course the words have their limits. When a patentee prescribes two elements in a claim he means that each will contribute its share of the result, but their duality is not important. When the two are incorporated into a single physical element, it remains as much a means to the first result and a means to the second, as though it were in two parts. Were this not true, any ingenious mechanic might pick an inventor's brains at pleasure.

[3] It is true that if the spring is twisted to one side an animal may not be caught which approaches from the opposite direction, though this depends on his position even then. But this does not matter. Even when so twisted it will operate like the patent if the animal's body is knocked down upon the spring, and in any case one does not escape infringement by practicing the invention imperfectly. The defendant's advertisements hold out an operation precisely like that of the patent; the putative "killing" blow of the secondary jaw is an excuse post litem motam.

The second patent is challenged because of Thompson's patent, 1,404,070, under which the defendant manufactures its infringement.

The filing date of this, February 20, 1920, is too late to anticipate that of the second patent, September 24, 1919, so that the defendant attempted to carry it back of the latter date by evidence in pais. We find it unnecessary to consider the adequacy of this proof under the rules appertaining to such issues, because it is conceded that Gibbs made his "kite" trap before Thompson's earliest date, and this we think was an embodiment of the second patent in suit. In this the fixed jaw was absent, its place being taken by a kite-shaped base-board of wood to which the whole trap was fastened. This was an exact equivalent of the fixed jaw, just as the spring in the infringing trap is its equivalent. It can make no difference whether the animal is caught between a fixed piece of metal extending beyond the primary trap or by a piece of wood. For commercial purposes the metal jaw was of course preferable, but the operation of each was precisely the same and the cruder form embodied all the invention of the finished product.

Gibbs's "kite" trap was used by him more than two years before he filed his application and this is pressed as a prior use fatal to the invention. The evidence does not justify that conclusion. Gibbs made some fifty of these traps for use upon a marsh which he controlled where muskrats abounded, these being the unhappy animals against whom these cruel devices are chiefly used. He sold none, but used them in his own trapping. He says that they were made for experiment to learn how far they would be effective, and that he was not satisfied that his invention had reached its definitive form until he had used them for some months, since the average catch per trap for a whole season is only a little more than three rats. We can see no reason to doubt the credibility of this evidence or to suppose that fifty was too many to establish an adequate test. We are therefore not disposed to differ with the learned judge in his conclusion that the prior use had not been made out beyond a reasonable doubt.

Bernard's double trap, 1,234,120, differs from the second patent just as Willing's does from the first, though it contains the element that the axis of secondary jaw must be at an angle to that of the primary. Bernard's secondary jaws are both movable, and neither moved through an arc of more than ninety degrees. This, for the same reason as in the case of Willing, makes the jaw perform quite a different purpose; the patent was not a trivial or colorable variation but proceeded

upon a different principle and accomplished a different result.

The defendant next argues that claim four of the second patent extends the monopoly of claim ten of the first. We have here not to do with the case where the second of two co-pending claims is the broader, though we do not hold that this is necessarily a critical distinction. Claim ten is the generic claim, claim four, the specific; the first covers any trap in which the secondary movable jaw sweeps over the primary trap to engagement with a fixed jaw. Claim four adds as limitations that the sweep must be more than ninety degrees, that the axis of the secondary jaw must be at an angle and that both must be held by a common latch and treadle. These are vital differences, adequate to sustain a new invention and not within Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121. There is no color for the claim of double patenting.

[4, 5] Again the defendant asserts that the invention of claim four was disclosed in the first specifications. This might be true and it would be irrelevant, the two patents having been pending in the office at the same time. We have discussed this question so recently in Traitel Marble Co. v. Hungerford, 22 F. (2d) 259, that we need only refer to that case. However, in fact the first patent did not disclose the "simultaneous" holding of both traps by a single latch and treadle. Concededly figures 4 and 5 of that patent did not, and the specifications so declare. Figures 6 and 7 are for a modification of figures 4 and 5. A study of figure 7 shows that the latch, *29*, will not disengage the jaw, *26*, until the end opposite to the point of engagement, *30*, is pulled upwards, and this can only occur when there is an upward pull on the base, *6*, of the primary trap. The springing of the primary trap by means of the spring, *2*, exerts no upward pull upon the base. It is only when the animal by its efforts to escape pulls on the closed primary trap that that pull communicated to the latch, *29*, releases the secondary jaw. While, therefore, the whole issue is irrelevant, it is a false one on the facts.

The other points raised seem to us too unimportant to require discussion. The inventions have had an extraordinary success and were without any real suggestion in what had gone before. We can see no more in the defendant's infringement than an unblushing effort to appropriate what belongs to another man.

Decree affirmed.