### ARTHUR COLTON CO. v. McKESSON & ROBBINS, Inc.

#### No. 317.

Circuit Court of Appeals, Second Circuit.

April 18, 1932.

T. Clay Lindsey, of Hartford, Conn. (C. B. Belknap, of Detroit, Mich., of counsel), for plaintiff-appellant.

Marsh, Stoddard & Day, of Bridgeport, Conn. (E. S. W. Farnum, Jr., and Augustus B. Stoughton, both of Philadelphia, Pa., of counsel), for defendant-appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff, Arthur Colton Company, is a manufacturer of clip attaching machines made under the patent in suit, of which it is the owner by assignment. The defendant, McKesson & Robbins, Inc., is a user of an alleged infringing machine manufactured by Stokes Manufacturing Company, which is conducting the defense of this suit. Both invalidity and noninfringement were set up as defenses, but only the latter issue was considered below.

The patent relates to a machine for forming and attaching a V-shaped clip to the compressed end of a metal tube filled with tooth paste, oil colors, or the like. It was old in the art to form such clips from a strip of sheet metal and to crimp them to the compressed ends of such tubes, but the prior practice either required an operator to place by hand the previously formed clip upon the end of the tube for the crimping operation, or allowed the clip to slide down by gravity onto the end of the tube to which it was to be clamped. Either method involved difficulties in seating the clip in exact alignment on the tube-end. The patent in suit met this problem in a new way. It formed the clip in the same jaws which transferred it to the tube-end and then clamped it tight. During the transfer the clip was held in place in the jaws by its own resilience, and being thus held it could be seated on the tube-end in exact alignment for the clamping operation. That this method of transferring and seating the clip was novel is not denied; none of the prior patents disclose it. That it required inventive thought

to devise the patented machine can scarcely be doubted in view of its immediate acceptance and success in the commercial field. The patent was granted March 9, 1926, on an application filed September 19, 1924. Up to the date of the trial the plaintiff had sold between 125 and 150 machines at an aggregate price of nearly one-half million dollars.

Claim 3 of the patent is the only claim in suit. It reads as follows: "3. In a clip attaching machine, means to feed a strip of metal into the machine, means to shear the strip into clip-blanks, means to press the blanks into the space between a pair of jaws and thereby fold the blank to V-shape, means to carry the jaws and clip to position over the closed end of a container tube, and means to force the jaws together to secure the clip onto the end of the tube." It will be observed that this claim describes a machine to perform an operation divided into five steps: (1) Feeding in a strip of metal, (2) shearing off a section, (3) forming it into a V-shaped clip between a pair of jaws, (4) moving the jaws and clip into position over the tube-end, and (5) clamping down the clip. Turning to the defendant's machine it will be found to perform the same operation in steps which may be described as follows: (1) Feeding in a strip of metal, (2) shearing off a section, (3) forming it into a V-shaped clip in a recess in the shearing mechanism, (4) pressing it between a pair of jaws and moving the jaws and clip into position over the tube-end, and (5) clamping down the clip. The differences are these: In the patented machine the clip-former (the jaws) is also the carrying and clamping element, while in the defendant's, the clip-former is the shearing mechanism and the jaws serve only as carrying and clamping agent. In other words, the patent performs steps (2) and (3) by two elements, and the defendant by one, and steps (3), (4), and (5) by one element while the defendant uses two.

The plaintiff contends that the clip of the defendant's machine is not fully formed until it is pressed into the carrying jaws, for concededly they have to compress the clip further (about 3/64 of an inch) in order that the friction resulting from its resilience may hold it in place during transfer to the position for clamping. If this contention were adopted, infringement would be shown within the very letter of the claim. Even if it be rejected, as we think it must be, the finding of noninfringement can be sustained only

if the patent be allowed no equivalents whatever. Such a view is too strict. It has often been held that infringement cannot be avoided by making a single element of a machine do two steps of a mechanical operation which the patent did by separate elements, or by using two elements to accomplish what the patent did by one, or by merely transposing the parts. Rockwood v. Gen. Fire Extinguisher Co., 8 F.(2d) 682, 688 (C. C. A. 2); Nathan v. Howard, 143 F. 889, 893 (C. C. A. 6); Gibbs v. Triumph Trap Co., 26 F.(2d) 312, 314 (C. C. A. 2); Barber v. Otis Motor Sales Co., 240 F. 723 (C. C. A. 2); Root v. Hobbs Mfg. Co., 294 F. 236, 242 (C. C. A. 2). While the patent called for the forming of the clip in the jaws which were to carry and clamp it, the essential part of the invention was not so much the forming of it in those jaws as the holding of it there while it was being carried to the position for clamping. The defendant has taken the substance of the invention; the same result is accomplished by the same principles of operation and by substantially the same means. The patent is valid and should be held to be infringed.

Decree reversed.