UNITED SHOE MACHINERY CORPORATION v. O'DONNELL RUBBER PRODUCTS CO. et al.

No. 6980.

Circuit Court of Appeals, Sixth Circuit.

June 4, 1936.

Hector M. Holmes, of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., and Bennett R. Knight, of Cincinnati, Ohio, on the brief), for appellant.

Frank L. Zugelter, of Cincinnati, Ohio (Walter F. Murray and James B. O'Donnell, both of Cincinnati, Ohio, on the brief), for appellees.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The patent in suit, McDonald 1,661,572, is in the art of folding sheet materials as practiced in the shoe manufacturing industry. In a suit for infringement the appellant, as owner of the patent, sought to hold the Irving Drew Company liable as a direct and the O'Donnell Rubber Products Company as a contributory infringer. The court below found none of the claims of the patent infringed, and so, without decision upon their validity, entered a decree dismissing the bill, from which the plaintiff appeals.

The folding of a margin or edge of sheet material is a common operation in the shoe industry. Edges may be wholly of leather, or may comprise leather to which other edging material called "galloon" or "French cord" is stitched. In the folding of leather the material is skived so as to reduce the thickness of the fold. Adhesive is applied on the flesh side, and the work passed through a folding machine, which operates mechanically to turn the edge over on a definite line of fold and hammer it down. If the edges are of French cord, it is unnecessary to reduce their thickness, though the operation is otherwise substantially the same. Two kinds of adhesive are mainly used in shoe manufacture—a rubber cement, which is normally sticky, or "tacky," and a hard cement which may be rendered tacky by the application of heat. The latter is called thermo-plastic cement. Both adhesives had long been in common use, but rubber cement only in folding operations.

Rubber cement had obvious disadvantages. Its application to the material in its normally tacky state resulted in much soiled work. It had been long recognized that these disadvantages might be obviated by the use of hard dry cement. Such cement lasts indefinitely without deterioration, needs only to be heated to become effective, and so material could be pre-coated and kept ready for folding. The problem, however, was to devise means for softening the cement immediately before the folding operation without injuring the material to which it was applied. It was clearly apprehended, and many sought its solution. Ridderstrom, a folding machine inventor, patent No. 1,694,796, proposed to hammer down the fold with a heated hammer. His effort was not commercially successful. Others tried heating ovens, with the same lack of result. O'Donnell, of the defendant company, devoted many years to experimentation. The best thing he could think of was an electrically heated metal unit attached to the folder called a "duck's beak." This was objectionable because it could not do the finer work and burned and sized the binding. It was abandoned.

This was the state of the art in 1928 when McDonald secured his patent upon an application filed in 1924. He proposed to use thermo-plastic cement and disclosed both method and machine, the latter being a more or less conventional folding apparatus provided with a pipe through which a blast of hot air was directed upon the coating of cement to soften it before the work reached the folding means. The solution, now seemingly simple, was clearly not obvious in view of the long extended search for the answer to the problem by those skilled in the art. McDonald was granted a patent with thirteen claims, five for a method, and the rest for a machine. Method claims 1, 2, and 3, and all of the machine claims, are in suit. Of the latter, 11 is the most specific, and is limited to means by which heated gas is conducted to the coated margin of the material to soften the cement. The broader claims cover all cement softening mechanisms or heating means.

We begin our study with consideration of claim 11, which is printed in the margin,[1] since it is urged upon us that if this claim is found valid and infringed, all relief to which the plaintiff may be entitled will be obtained, and it will be unnecessary to consider either the validity of the broader claims of the patent or the fact of their infringement. We agree that this is so. Reo Motor Car Co. v. Gear Grinding Machine Company, 42 F.(2d) 965, 971 (C.C.A. 6); Firestone Tire & Rubber Co. v. United States Rubber Co., 79 F.(2d) 948, 959 (C.C.A. 6). Validity of claim 11

[1] A machine of the class described having, in combination, a support for a piece of sheet material having its margin coated with hard cement, means for feeding the piece over the support, a co-operating plow and fold guide for forming the fold, a hammer for pressing the fold, and means for conducting a heated gas to the coated margin of the piece to soften the cement.

is not assailed. While this does not relieve us of duty to consider patentability, Magic City Kennel Club v. Smith, 38 F.(2d) 170, 173 (C.C.A. 10); Hill v. Wooster, 132 U. S. 693, 698, 10 S.Ct. 228, 33 L.Ed. 502, we think that the long-recognized problem involved and the long but futile search for its solution, with appropriate consideration to the presumption of validity that attaches to the grant, justify a conclusion that claim 11 is valid, and we so hold.

The question, therefore, narrows to one of infringement. The defendant O'Donnell Rubber Products Company manufactures and leases, and the Irving Drew Company uses, in combination with a well-known folding unit, a heating device by which a jet of hot air is applied to soften thermo-plastic cement immediately before folding operations are to be performed. The O'Donnell Company confesses contributory infringement if the Drew Company is a direct infringer, but the fact of infringement by either is denied.

It is contended that the patent in suit does not relate to the folding art at all, but is directed to a shoe edge finishing machine of a different species than that charged to infringe, and the court below so held. In so far as we are able to understand the argument, we regard it as tenuous, and based upon wholly irrelevant considerations. In addition to folding and cementing down of the edge of an upper shoe part, there is also a well-known method of finishing leather that is known as edging. In this operation the leather is not mechanically turned and folded, but is curled over by the application of intense heat to the flesh side of the leather itself. This intense heat shrinks the leather so that it is caused automatically to curl. There is a simultaneous searing and curling. The distinction between the two operations was well understood in the art. From the circumstance that McDonald combined his cement softening element with what was originally an edging machine of the Fossa type, patent No. 1,464,504, and the additional circumstance that in his specification he refers to a prior patent of his own for a curling machine wherein are described the properties of thermo-plastic adhesive in relation to curling, the conclusion was reached below and is now urged that the patent in suit is not for a folding machine. We cannot, however, disregard terms employed in the patent so well understood in the art. The patent is styled as one in the folding art. The description is of a folding operation, and the means employed are for folding and not curling. Nor may we disregard the reorganization of the Fossa machine in the combination. McDonald eliminated from Fossa the "hot searing tool" which is the vital edging or curling element. He made a folding machine of Fossa before he included it in his combination. Clearly the patent is for a folding machine.

Again it is said that McDonald was working in the art of folding leather and not French cord, while the infringing device is used with the latter material and not with leather at all. But the claims in suit are not limited to the folding of a specific material. They relate to a method of and a machine for folding the margins of sheet material. While the drawings illustrate edges of leather skived for folding, the inventor points out in language too clear to be misunderstood, that his invention is not limited in its broader aspects to the particular kind of work which has been described. Moreover, no mere problem of folding as such was in any way involved in the McDonald invention. The folding operation is the same whether the material is leather or French cord, and this was amply demonstrated by experiments below. Some adjustment of gauges may have been required because of differences in the thickness of the materials, but nothing more. McDonald did not conceive any new folding element. Nor is there merit to the contention that until the trial no one knew that McDonald could be operated with French cord, for the law is clear that an inventor is entitled to the benefit of all the uses to which his invention may be put whether understood by him or not.

The main defense, however, against infringement is based on the contention that an essential element of the claim is absent in the infringing machine. Claim 11 calls for a separate feeding means, fold forming means and hammer. The defendants use a Model G folding machine manufactured by the plaintiff. The hammer element serves both for feeding and pressing the fold. It is therefore urged that there is absent in the infringing device a separate feeding means. Nevertheless the hammer in the Model G folder, after performing its pressing function, co-operates with another element to feed the work, and so both elements are represented. Infringement may not be avoided by making a

single element of a machine do two steps of a mechanical operation. Gibbs v. Triumph Trap Co., 26 F.(2d) 312, 314 (C.C.A. 2); Arthur Colton Co. v. McKesson & Robbins, Inc., 58 F.(2d) 157, 158 (C.C.A. 2); Simplex Appliance Co. v. Star Can Opener Co., 37 F.(2d) 491, 492 (C.C.A. 7). The converse is also true. Compare Wadsworth Electric Mfg. Co., Inc., v. Westinghouse Electric & Mfg. Co., 71 F.(2d) 850, 852 (C.C.A. 6); Mills Novelty Co. v. Monarch Tool & Mfg. Co., 76 F.(2d) 653, 655 (C.C.A. 6). Defendants urge upon us our decision in D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 259 F. 236, 240, where it was said that: "Where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency." We reaffirm rather than abandon the principle there declared. What the defendants overlook is that the express limitation here insisted upon does not "pertain to the inventive step but rather to its mere environment," and does not "import a substantial function which the patentee considered of importance to his invention." The inventor combined a well-known folding machine with his cement softening element. He invented no new folding elements. The selection and reorganization of the Fossa apparatus was purely fortuitous. He might equally have chosen any other well known folder. The limitation does not apply to his inventive concept, and so neither precludes nor limits him from resorting to the doctrine of equivalents in protecting himself against infringement.

The fact that the plaintiff has never commercially manufactured under the patent is of no importance as bearing upon the question of infringement. Whatever may be the policy of patent laws elsewhere, it has long been settled that, in the United States, exclusion of competitors is the very essence of the right conferred by a patent, and it is the privilege of any owner of property to use or not to use it without question of motive. Paper Bag Patent Case (Continental Paper Bag Co. v. Eastern Paper Bag Co.), 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122. We have had a number of occasions to consider the applicable rule. The fact that the owner of a patent makes no use of it may inspire caution in a doubtful case of validity, and lead to hesitation in giving maximum breadth to claims, but if the patent is valid the owner may use it or not as he sees fit. Fox Typewriter Co. v. Corona Typewriter Co. (C.C.A.) 282 F. 502, 511; Byers Machine Co. v. Keystone Driller Co. (C.C.A.) 44 F.(2d) 283, 285; Wine Railway Appliance Co. v. Enterprise Railway Equipment Co. (C.C.A.) 25 F.(2d) 236, 238.

The decree below is reversed. The plaintiff may have the usual relief for infringement of Claim 11. The bill will be dismissed as to all other claims, without prejudice.