### ENTERPRISE MFG. CO. v. SHAKESPEARE CO. et al.

### SHAKESPEARE CO. v. ENTERPRISE MFG. CO. et al.

### BRONSON REEL CO. v. SAME.

Nos. 8023–8025.

Circuit Court of Appeals, Sixth Circuit.

Sept. 18, 1939.

Albert L. Ely, of Akron, Ohio (Arthur C. Denison, of Cleveland, Ohio, and Laurence W. Smith and Smith, Strawhecker & Wetmore, all of Grand Rapids, Mich., on the brief), for Enterprise Mfg. Co.

Otis A. Earl and Ralph L. Chappell, both of Kalamazoo, Mich. (Earl & Chappell, all of Kalamazoo, Mich., on the brief), for Shakespeare Co.

Freeman, Sweet, Albrecht & Weidman, of Chicago, Ill. (Hadley F. Freeman, of Cleveland, Ohio, and Donald H. Sweet, of Chicago, Ill., on the brief), for Bronson Reel Co.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

These appeals arise out of a suit by the Enterprise Manufacturing Company against the Shakespeare Company for infringement of six patents relating to fishing reels. Enterprise owns five of the patents, but legal title to the sixth (Schmid, 1,461,586) is in the Bronson Reel Company. Enterprise claims an exclusive license under Schmid, and after demand that Bronson join Enterprise as co-plaintiff in the litigation, and Bronson's refusal, Enterprise joined Bronson as defendant. Independent Wireless Telegraph Co. v. Radio Corp. of America, 269 U.S. 459, 468, 46 S.Ct. 166, 70 L.Ed. 357.

The District Court held all the claims of Case patent, 1,579,076, valid and infringed, and Shakespeare appeals from this portion of the decree. The other five patents were held invalid, and Enterprise appeals from four of these holdings. As to Case patent, 1,688,135, no appeal was instituted. Bron-

son appeals from that part of the decree declaring a document executed by Bronson a valid exclusive license to Enterprise to use the Schmid patent, and also from the holding of the court that Case, 1,579,076, is valid.

Three types of fishing reels are involved: bait-casting reels, fly-casting reels, and salt-water reels adapted for deep sea fishing.

### Bait-Casting Reels

Bait-casting reels are designed to be used on comparatively short rods, and act as a spool for storing and permitting the unreeling of the fishing line. The bait or artificial lure is fairly heavy in order that it may be cast out and drawn in so as to attract the fish and cover more of the fishing territory. The line is guided to the spool on the reel through a reciprocating line-guiding carriage so that as the line is wound in, it is spread evenly across the spool back and forth, thus preventing a piling up and tangling of the line. The line-guiding or "level-wind" mechanism is operated by a double screw-threaded shaft geared to the spool and rotated in unison therewith. Bait-casting reels with level-wind devices are old in the art.

Case, 1,579,076, is for an improvement in bait-casting reels. The claims in issue, 8 to 11 inclusive, 22, 23 and 27, were held valid and infringed. For discussion we divide them into two groups.

The object of claims 8 to 11, inclusive[1], is to provide a reel in which the level-wind mechanism, the part of a reel which receives the heaviest wear, "may be readily removed for cleaning or repairing without entirely disassembling the reel and particularly without disturbing the end plates." This is claimed to be an advance over the prior art reels whose mechanism is such that when their level-wind parts are disassembled for repair, reassembly is difficult because of the loose gears and parts. Such reels are inoperative until reassembled. Case accomplished his object by providing a hole in one of the plates of the reel large enough to permit the withdrawal of the screw-threaded shaft, thus leaving the remainder of the reel intact and immediately usable.

Shakespeare contends that the District Court erred in interpreting the claims by

---

[1] Claim 8 is typical. It reads as follows:

"A fishing reel, including a frame and level wind mechanism mounted within the confines of the frame and embodying a rotatable reversely threaded shaft and a line guide member movable along the same, said reversely threaded shaft being so mounted as to permit removal thereof without disassembling the frame."

limiting them so as to include a reel which is operative after the level-wind mechanism has been removed. In this connection, it urges that as the frame or end-plates do not include the gear-casing, the removal of the level-wind device without disturbing the frame fulfills the patent description even though the reel may be rendered inoperative by the removal of the gear-box, gears or crank. Shakespeare contends also that as the claims do not specify that the reel is operative after the level-wind mechanism is removed, the court erred in so limiting the claims.

■ This reel, operative after removal of the level-wind mechanism, achieves a result inherent in following the patent teachings. The quality of operability after the level-wind device is removed need not therefore be claimed. The inventor is entitled to all the uses to which his device may be put, whether understood by him at the time or not. Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422; United Shoe Mach. Corp. v. O'Donnell Rubber Products Co., 6 Cir., 84 F.2d 383.

■ Shakespeare contends that Case, 1,579,076, is anticipated and hence invalid. It relies upon its "Style C" reel which employs two single-threaded shafts to propel the level-wind device which shafts are removable through the end-plates, leaving the frame intact. While it is admitted that the two single-threaded shafts are the mechanical equivalent of the reversely-threaded shaft employed by Case, we think the District Court was correct in holding that the "Style C" reel does not anticipate. In order to remove the whole level-wind device it is necessary to take out the screw which affixes the crank to the reel, and the reel could not be made operative without retaining one of the level-wind shafts to which the crank is directly attached. Shakespeare discontinued manufacture of this reel in 1900, which in itself indicates its impracticability. Shakespeare's "Style A" and "B" reels do not anticipate because the casing which holds the gears for the two single-threaded level-wind shafts also includes the bearing for the spool. The removal of the casing is necessary to take out

the level-wind device, and this causes the spool to fall out of place and the reel becomes inoperative.

Marhoff, 883,842, does not anticipate, because removal of the level-wind device necessitates removal of the spool bearing, thus allowing the spool to drop out of place. Other claimed prior art devices are of the "outrigger" type, which consists of level-wind devices not within the confines of the frame and hence not anticipating.

■ Shakespeare seeks to avoid infringement by showing that its level-wind mechanism can be removed in a different manner from Case, but still intact, that is, with the line guide attached to the reversely-threaded shaft, by withdrawing the shaft partially through the end plate, tilting it and then completely removing it by withdrawing it from the inner side of the end-plate. If the mechanism can be removed so as to infringe, the fact that it can be differently removed will not avoid infringement. Cf. Cugley v. Bundy Incubator Co., 6 Cir., 93 F.2d 932; Sandusky Foundry & Machine Co. v. De Lavaud, 6 Cir., 274 F. 607. We think the District Court was correct in holding claims 8 through 11 of Case, 1,579,076, valid and infringed.

■ Claims 22, 23 and 27[2] of the same patent specify that the gears driving the level-wind shaft shall be held in place when the shaft is removed, without disturbing the end-plates. The Shakespeare reels, types A, B and C, do not anticipate this feature because the driving gears of the level-wind devices are affixed to the shafts. In Marhoff, the driving gears are separable from the shaft, but the gear is held to the shaft by a screw which cannot be removed except by dismantling the whole gear casing and assembly. This cannot anticipate, for obviously, if the whole gear assembly must be taken apart, then the driving gear is not held in place when the level-wind shaft is removed. We do not consider other prior art patents claimed to anticipate these claims, because they were not urged in the District Court. Cf. Hudson v. Commissioner, 6 Cir., 99 F.2d 630.

Infringement of these claims is not seriously controverted. The driving gears of

---

[2] Claim 23 is typical. It reads as follows:

"In a fishing reel, the combination of end plates, a rotatable spool, a reversely threaded shaft, a line guide member actuated thereby, a gear casing attached to one of said end plates, gears therein for driving said spool and shaft, and means on said casing and the adjoining end plate for confining the several gears in their respective axial positions, said reversely threaded shaft being removable from the reel without disturbing the end plates or the gears."

Shakespeare are held in axial position when the level-wind device is removed. The District Court was correct in holding claims 22, 23 and 27 of Case, 1,579,076, valid and infringed.

 Case patent 1,637,437, is for an improvement in bait-casting reels. The claims in issue, 11[3], 16 and 17, were held invalid for lack of patentable novelty. The object of the invention is to provide a longer carriage for the level-wind mechanism so that the line will be laid to the ends of the spool, and thus avoid a falling down of the line at the ends of the spool with the resulting entanglement which causes "backlashes." This was accomplished by providing for a recess in at least one of the end-plates into which the extension of the carriage could pass. Irrespective of the prior art patents claimed to disclose such recesses, we think the simple expedient of making room for the carriage extension to move to the ends of the spool is obvious and does not rise to that degree of ingenuity requisite to invention. The structure is merely the result of mechanical skill and is not patentable. Rid-Jid Products, Inc., v. Rich Pump & Ladder Co., 6 Cir., 103 F.2d 574; Barber-Coleman Co. v. A. G. Redmond Co., 6 Cir., 94 F.2d 717; A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531. Claims 11, 16 and 17 of Case, 1,637,437, are void for lack of invention.

 Schmid, 1,461,586, is also for an improvement in bait-casting reels. The claims involved are 10 and 11. The District Court held claim 10 void for lack of patentable novelty, and held claim 11 to be for an aggregation and hence void. Enterprise claims an exclusive license under this patent arising out of an instrument executed May 24, 1928, by Bronson. The claims are designed to accomplish the same object as Case, 1,637,437, but by the use of an opening in the end-plate instead of a recess. Our holding as to this patent is the same as on Case, 1,637,437. Invention is not present.

## Fly-Casting Reels

Fly-casting reels are used for fly-rod fishing, with a long light rod. The reel is merely a spool or frame for the storage and reeling out of the line, rotated by a handle, but with no gearing. The bait used with this kind of reel is comparatively light. The line, which is specially prepared by oiling or enameling, and very expensive, is withdrawn by the fisherman by hand through a line guide fastened on the edge of the reel-casing.

Pflueger, 1,871,386, is for an alleged improvement in fly-casting reels in which the line guide consists of a polished ring or eye so that the line cannot be rubbed or frayed by withdrawals from the spool, regardless of the direction of the pull. The District Court held the claims in suit (claims 3 and 4)[4] invalid for failure to disclose any inventive concept over the prior art. The claimed merit of Pflueger in claim 3 consists in having the sides of the guide-ring flattened so that it can be affixed to the reel frame. Claim 4 is similar, except that the ring is positioned further out on the frame so that the edge of the ring where it is fastened on the frame will overlap, thus permitting only the polished ring to touch the line.

 British patent 18,726, to Hardy is a complete anticipation of the claims in suit. Its purpose is to accomplish the same object as Pflueger. It discloses a diagram almost identical showing the guide-ring overlapping the frame and positioned in the same manner. Merely cutting away part of the guide-ring to fit it to the frame does not amount to invention. The structure is the result of an obvious mechanical expedient. Rid-Jid Products, Inc., v. Rich Pump & Ladder Co., supra; Barber-Coleman Co. v. A. G. Redmond

---

[3] Claim 11 is typical. It reads as follows:

"A fishing reel, comprising a frame having end plates, a spool, a reversely threaded shaft parallel with the spool axis, and a level wind carriage traversing said shaft between said end plates, at least one of said end plates having a recess into which the carriage extends at the end of its traversing movement, thereby maintaining long carriage travel and extended bearing of said carriage upon said shaft."

[4] Claim 4 is typical. It reads as follows:

"In a fishing reel, two annular spaced frame members having opposed flat surfaces, an annular line guide located between the frame members and having its outer surface overlapping the frame members, chordal portions of said guide being cut away to fit against the opposed surfaces of the frame members, and means for fixedly securing the guide to the respective frame members."

804

Co., supra; A. O. Smith Corp. v. Petroleum Iron Works, supra. Claims 3 and 4 of Pflueger are void for lack of invention.

## Salt Water Reels

Salt water. reels are adapted for deep sea fishing and are mounted on a heavy, sturdy rod. The reels are also heavy and have a "drag" mechanism designed to permit the fish to withdraw the line against friction so that the fish can be more easily tired out. The friction can be adjusted so that the pull of the fish will be less than the test strength of the line.

Adams, 1,932,360, is for a fishing reel with a drag mechanism by which the rotation of the spool is retarded. The drag device consists of a plurality of friction disks and friction washers alternately disposed and associated with the driving gear, the whole being adjustable by means of pressure exerted by a star wheel. The claimed improvement of Adams was to provide for an increase of the effective frictional area over the older forms of reels at the same time achieving a simple and compact device. The District Court held all the claims in suit, claims 6 to 11, inclusive, invalid as not involving invention over the prior art.

Clutch drag mechanisms are old in the art. Case, 1,554,786, Case, 1,697,851, and Adams, 1,731,208, all disclose arrangements of disks and washers in fishing-reels for the purpose of retarding the pulling out of the line. The change proposed by the patent in suit in the number or position of the elements involved does not amount to invention. The claims in suit are invalid.

The remaining question has to do with an instrument dated March 24, 1928, headed "Memorandum for exchange of licenses between The Enterprise Mfg. Company and the Bronson Reel Co.," signed for those companies by their respective presidents. The District Court held the document to be a valid contract. Bronson contends that it merely embraced the results of preliminary negotiations; that the license agreements called for by it had never been executed; and that the license of claims 10 and 11 of Schmid, 1,461,586, to Enterprise was contingent upon a favorable report of Bronson's patent attorney that the Case patents, 1,579,076, and 1,637,-437, were valid.

There is substantial evidence in the record to support the court's findings upon the questions of fact which led to its conclusion that the document is a valid contract. Even if the execution of other papers was contemplated by the parties, their signing the instrument indicated an intent to be bound by its terms. The contract was not contingent upon Bronson's patent attorney's favorable report on validity of the Case patent, for it does not so state, and the testimony regarding the execution of the instrument does not bear out this contention.

Bronson also appeals from the portion of the decree holding claims 8 to 11, inclusive, of Case, 1,579,076, valid. Bronson is estopped to deny their validity. Since the agreement with Enterprise is valid, Bronson is a licensee. Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 99 F.2d 1.

The decree is affirmed.