LARAMI LIMITED, Plaintiff,

v.

The OHIO ART COMPANY,
Defendant.

Civil Action No. 03–2773 (JEI).

United States District Court,
D. New Jersey.

July 8, 2003.

Law Offices of Gary A. Rosen, P.C. by Gary A. Rosen, Esq., Philadelphia, PA, for Plaintiff.

Woodcock Washburn LLP by Richard Kurtz, Esq., Barbara Mullin, Esq., Philadelphia, PA, Dechert LLP by Christopher J. Kelly, Esq., Princeton, NJ, for Defendant.

## OPINION

IRENAS, District Judge.

Presently before this Court is a motion for a preliminary injunction filed by Plaintiff Larami Ltd. ("Larami"), maker of Super Soaker water guns, claiming that Defendant Ohio Art Company ("Ohio Art") is infringing on its patents with its A.R.M. 4000XL water gun ("A.R.M."). Specifically, Larami claims that Ohio Art is infringing on two of its patents, No. 5,799,827 (the "827 patent") and No. 5,339,987 (the "987 patent"). The Court will deny Plaintiff's motion for a preliminary injunction.

### I.

Ohio Art is a longtime toy manufacturer best known for its Etch A Sketch drawing toy. The A.R.M. is a relatively new product that represents the first attempt by Ohio Art to enter the toy water gun market. The A.R.M. allows the user to strap the water gun onto his arm. As a result,

unlike Larami's Super Soaker, only one arm is needed to operate the gun. A tank used to store water is worn on the user's back and is similar to a backpack. There is one connection between the tank and the "bladder" of the gun. The bladder is expandable, and the user of the gun pumps water from the tank into the bladder by flexing his arm. When the trigger of the gun is depressed and the valve is opened, water is forced out of the gun due to the pressure put on the water in the expandable bladder.

Larami is a subsidiary of Hasbro, Inc., a large toy manufacturer. The Super Soaker line of water guns has dominated the toy water gun market since its introduction in 1990 and Larami states that Super Soakers presently account for approximately 60% to 80% of total sales in the toy water gun market. Larami claims that sales in the toy water gun category have been declining as the market has matured and demand for high end water guns has declined.

## II.

Courts having jurisdiction of patent cases "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Court of Appeals for the Federal Circuit has noted that "the standards applied to the grant of preliminary injunctions are the same in patent cases as in other areas of the law...." *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1554 (Fed.Cir.1995). Thus, a party seeking a preliminary injunction must demonstrate: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction is not issued; (3) a balance of hardships in favor of the moving party; and (4) that the public interest favors the issuance of the preliminary injunction. *Amazon.com, Inc. v.*

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir.2001) (citing *Reebok Int'l Ltd. v. J. Baker, Inc.* 32 F.3d 1552, 1555 (Fed.Cir.1994)).

In order to establish a likelihood of success on the merits, a movant must make a "clear showing" that the patent at issue is both valid and infringed by the accused device. *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed.Cir. 1985); *see also, Amazon.com*, at 1359; *Nutrition 21 v. United States*, 930 F.2d 867, 870 (Fed.Cir.1991) (quoting *Atlas Powder*). Ohio Art does not dispute in this case that the patents at issue are valid. If a patentee succeeds in making a strong showing of validity and infringement, a presumption of irreparable harm is raised. *See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed.Cir.2001); *Reebok Int'l*, 32 F.3d at 1556 ("A strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee."). For that reason, likelihood of success on the merits is often the primary issue in a motion for a preliminary injunction of alleged patent infringement. Accordingly, it is an essential element of Larami's motion that it carry its burden of demonstrating a likelihood of success on its claim that the Ohio Art's A.R.M. gun infringes on the 827 and the 987 patents.

## III.

Generally, determination of the infringement of a patent is a two-step inquiry: first, the claims in the patent at issue must be construed to determine their scope and meaning; second, a comparison must be made between those claims as properly construed and the allegedly infringing device or process. *Seal–Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 842 (Fed.Cir.1999);

*Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed.Cir.1998); *see also, generally,* 5A Donald S. Chisum, *Chisum on Patents,* § 18.03 (2001). In order for infringement to be proved, it must be shown that the infringing device contains or "reads on" each and every limitation disclosed in a given patent claim. *Mas–Hamilton,* 156 F.3d at 1211; *Amhil Enters. v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed.Cir.1996). Under the doctrine of equivalents, "a claim is infringed only if each limitation in the claim is found in the accused device, either literally or by a substantial equivalent." *Vehicular Technologies Corp. v. Titan Wheel Int'l, Inc.,* 141 F.3d 1084, 1089 (Fed.Cir.1998) (stating that something is a substantial equivalent if it performs the same functions "in substantially the same way, to produce substantially the same result.").

 Although claims must be construed to determine infringement, a court need not arrive at a final and conclusive claim construction in deciding a motion for a preliminary injunction, *see Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1221 (Fed.Cir.1996), and the court's findings and conclusions regarding claim construction are not binding at trial, *see Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 681 (Fed.Cir.1990). In sum, the court's obligation at the preliminary injunction stage is only to determine the probability that infringement can be proved after a full presentation of the evidence at trial. *Atari Games Corp. v. Nintendo of America, Inc.,* 897 F.2d 1572, 1575 (Fed.Cir.1990); *Dentsply Int'l, Inc. v. Great White, Inc.,* 132 F.Supp.2d 310, 315 (M.D.Pa.2000).

Ohio Art argues that Larami's failure in its original brief to detail the alleged claim constructions on which it is basing its infringement claim has left Ohio Art unable to properly respond to the Plaintiff's motion. This argument is disingenuous, however, as the Certification of Jack Krafchick clearly lays out Larami's claim constructions. In the Krakchick Certification he states that Ohio Art is violating claims 1 through 34 of the 827 Patent and claims 1, 3, and 7 of the 987 Patent. Since the certification itself only includes claim constructions of claims 1, 2, and 3 of the 827 Patent and claims 1, 3, and 7 of the 987 Patent, this Court will only look at whether Larami has demonstrated a likelihood of success on the merits of those claims.

## IV.

### A.

Defendant details three limitations in claim 1 of the 827 patent which it argues are not present in the A.R.M. water gun. Claim 1(c) requires that the gun have "a water tank connected to said water gun and having an outlet connected to a pump." There is no dispute that the water tank in the A.R.M. (basically a backpack) is connected to the gun itself only through an outlet connected to the pump. Ohio Art argues that it is not infringing on the claim since the claim requires two connections, one to the gun and one to the pump.

 "It is settled law, and it is good sense, that one does not escape infringement by combining into one element what a claim specifies as two, provided that the single element performs the function of both in the same way." *Magrath v. Draper Corp.,* 384 F.2d 672, 673 (1st Cir.1967) (quoting *Gibbs v. Triumph Trap. Co.,* 26 F.2d 312, 314 (2d Cir.1928)); *see also Sun Studs, Inc. v. ATA Equipment Leasing, Inc.,* 872 F.2d 978, 989 (Fed.Cir.1989), *overruled on other grounds* ("An apparatus claim describing a combination of components does not require that the function of each be performed by a separate structure in the apparatus."). The "all elements rule," however, requires that in or-

der to prove infringement, "every element in the claim must be found in the accused device either literally or equivalently." *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1562 (Fed.Cir.1991).

█ The language of the claim itself states that there are two separate connections. One is a connection between the water storage tank and the water gun and the other is an outlet connected to a pump. Ohio Art's A.R.M. gun does clearly have an outlet connected to a pump. The question then becomes whether this is functionally equivalent to the connection to the gun described in claim 1(c). The language of the patent indicates that these are functionally two separate requirements. The A.R.M. gun uses a backpack to store water that is not connected to the gun itself, except through the outlet to the pump. The reading of the patent implies that the tank also be physically connected to the gun and therefore functionally the connection through the outlet cannot be the same as having the tank be physically connected to the gun. Otherwise, there would be no need in the patent language to use the term "and" and specify that there be a connection and an outlet. Simply referring to the outlet would be enough. Ohio Art has therefore not "read" onto the limitation detailed in claim 1(c).[1]

### B.

█ The language of claim 1(d) requires that the pump be "physically connected to said housing." The pump at issue is connected to what Ohio Art refers to as the frame subassembly. The frame subassembly is then connected to the pistol subassembly. Ohio Art argues that only the pistol subassembly should be considered the housing, while Larami argues

that both the pistol subassembly and the frame subassembly constitute the housing.

Claim 1(a) of the 827 patent describes the housing as "having a barrel, a nozzle, a handle and a trigger located thereon." All four of these parts are located on what Ohio Art calls the pistol subassembly. Accordingly, Ohio Art argues that the housing is comprised of only the pistol subassembly. The use of the term "having" indicates that additional elements may have meant to be included, although it cannot be presumed that the definition is open-ended, as use of the term "comprising" would have clearly indicated. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1348 (Fed.Cir.2001). Interpreting similar language in another patent dispute, the Federal Circuit has held that the use of the term "having," when combined with "housing," can be interpreted to be either closed or open, depending on the other language in the patent. *Lampi Corp. v. American Power Products, Inc.,* 228 F.3d 1365, 1376 (Fed.Cir.2000).

The language used in the limitation is that the barrel, nozzle, handle, and trigger are "located thereon." This implies that these components are not part of the housing, but are in some way attached to the housing. Later in the 827 patent, in claim 6, it is specified that the pump be "attached" to the main housing. Looking at this language, the 827 patent indicates that the pump is also located on the main housing. In addition, in the preferred embodiment of the 827 patent, the bladder and the slider, as well as other pieces, are also located on the main housing. Taking into account the language of the 827 patent and its preferred embodiment, this Court finds

---

**1.** This finding that the limitation in claim 1(c) is not present in the A.R.M. gun is enough to find that the entirety of claim 1 has not been infringed. *See Mas–Hamilton,* 156 F.3d at

1211; *Amhil Enters.,* 81 F.3d at 1562. The Court will, however, analyze the remaining limitations in claim 1 that Larami argues are present in the A.R.M. gun.

that the definition of main housing in claim 1(a) was meant to be open.

While the barrel, nozzle, handle, and trigger of the A.R.M. gun are all located on the pistol subassembly, the main housing of the gun must include the frame subassembly as well. The pistol subassembly, while it can be separated from the frame subassembly, and the frame subassembly are really one piece upon which the various components of the gun are attached. Since the Court has found that the definition of main housing in the 827 patent was meant to be open, and since the pistol and frame subassemblies are essentially one piece, the frame subassembly must also be considered to be part of the main housing. Therefore, because the pump is connected to the frame subassembly, Ohio Art has likely "read" onto the limitations in claim 1(d) of the 827 patent.

### C.

■ Claim 1(e) states that there is "a bladder release valve ... being connected to said trigger for opening and closing thereof." In the A.R.M. gun the trigger and the bladder release valve are not directly connected. Instead, the trigger makes contact with the rocker wheel, which is connected to a cam, which, when the trigger is pressed, pushes backwards onto a spring, which pushes the linkage backwards and opens the valve. Larami argues that since the claim does not use the language "physically connected," and since the purpose of the various connections is to open and close the bladder release valve, Ohio Art is still "reading" onto claim 1(e).

Larami admits that in other sections of its patent the term "functionally connected" is used. In addition, Larami provides no legal support for its contention that the language "connected to" does not require a direct connection. In the A.R.M. gun the trigger is not even connected to the rocker wheel. Instead, it simply acts upon the rocker wheel by pushing against it. In the A.R.M. gun the trigger is only functionally connected to the rocker wheel, in that it acts on the rocker wheel, and is not directly connected to the bladder release valve.

By arguing infringement using a broad definition of the claim language, Larami is essentially arguing that its patent covers almost every water gun that could conceivably be designed. It is hard to imagine how to design a water gun where the trigger would not be at least functionally and indirectly connected to a release valve. What Larami has really patented is a very specific method of assembling what is, in reality, old technology. Ohio Art has put together that same old technology in a different way from Larami and has therefore not "read" onto claim 1(e) of the 827 patent.

### D.

This Court has found that Ohio Art has likely not infringed upon claim 1 of the 827 patent because it has not "read" onto claims 1(c) or 1(e). Claims 2 and 3 are both dependent on claim 1, so therefore if Ohio Art has not infringed claim 1, it cannot have infringed claims 2 and 3. Accordingly, this Court finds that Larami has not shown a likelihood of success on the merits in its argument that Ohio Art has infringed on the 827 patent.

### V.

### A.

Claim 1 of the 987 patent requires that the gun have "at least one pressurizable air/water storage tank." Ohio Art asserts that since its water storage tank (the backpack) is not pressurizable, it is not violating this limitation of the claim. Larami admits that the water storage tank in the A.R.M. gun is not pressurizable but argues

that the bladder is a pressurizable air/water storage tank.

██ The plain language of the 987 patent indicates that the tank must store water and air. Otherwise, it would read an "air and/or water storage tank." When interpreting patent claims, "[a]ll limitations in a claim must be considered meaningful." *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed.Cir.1994). The limitation in the claim that there be a "pressurizable air/water storage tank" is not met by the presence in the A.R.M. gun of a pressurizable water storage tank, in the form of the expandable bladder. The bladder is not designed to store air, only water. It is clear that the 987 patent envisioned a storage tank filled partly with water and partly with pressurized air.[2] The A.R.M. gun does not have such a tank and so therefore this limitation of claim 1 of the 987 patent has not been infringed upon by Ohio Art.

### B.

Claim 1(d) of the 987 patent states that there is "a linkage connected to said trigger." As with the language in the 827 patent, the term "functionally connected" is not used. In the design of the A.R.M. gun the trigger is not connected to the linkage. It acts upon the linkage by pushing against the rocker wheel, which is connected to the linkage. The preferred embodiment of the 987 patent clearly shows how the trigger there is actually connected to the linkage and directly pulls on the linkage. (Def.'s Ex. D–4). This limitation in claim 1(d) is not present in the A.R.M. gun.

### C.

██ Defendant notes a number of limitations present in claim 1(e) that it argues

are not present in the A.R.M. gun. The first one is that there be "a delay spring functioning as part of said linkage and located on said linkage between said valve and said trigger." Larami argues that what Ohio Art refers to as the "rear release spring" is the same as a "delay spring." While the spring does function as part of the linkage and is located on the linkage, it is not located between the valve and the trigger. As was noted above, the trigger is not connected to the linkage. Instead, the trigger acts upon the rocker wheel, which then indirectly acts upon the relevant spring. In the preferred embodiment of the 987 patent the spring is located directly on the linkage, directly between the trigger and the valve. (Def.'s Ex. D–4). In the A.R.M. gun the spring is located on the linkage, but it is at one end of the linkage and is not directly between the trigger and the valve. Therefore, it is already clear that Ohio Art has not "read" onto claim 1(e) of the 987 patent.

██ Defendant also argues that it does not infringe on the limitation that "the force of the delay spring must be overcome by a user displacing said trigger a predetermined distance" and that "upon displacement of said trigger said predetermined distance, the second force overcomes the first force to displace said valve from the closed position." Ohio Art first argues that because the preferred embodiment of the 987 Patent states that the delay spring expands, and because the spring in the A.R.M. gun actually compresses, there is no infringement. The claim itself contains no such language and that compression fits within the claim limitation.

Ohio Art also states that the trigger of the A.R.M. gun does not need to move a

**2.** The preferred embodiment of the 987 patent shows a water gun where the effect of air pressure acting on water in a tank would

force water out of the open valve. There is no expandable bladder in this design. (*See* Def.'s Ex. D–4).

predetermined distance before the valve opens and says that "there is really no delay" between putting pressure on the trigger and the valve opening. However, visual inspection shows that, while slight, the effect of the spring compressing requires that there be a predetermined distance that the trigger must be pushed before the valve will open, and that there is obviously a short delay caused by the presence of the spring. Therefore, these limitations in claim 1(e) are present in the A.R.M. gun. Yet since the Court has already demonstrated that other limitations of claim 1 are likely not present, Ohio Art has likely not infringed on claim 1 of the 987 patent.

### D.

Claims 3 and 7 of the 987 Patent are dependent on claim 1, and so therefore need not be dealt with. Accordingly, Larami has not shown a likelihood of success on the merits in its argument that Ohio Art has infringed upon the 987 patent.

### VI.

Although a court must consider all four factors before granting a preliminary injunction, *see Reebok Int'l*, 32 F.3d at 1556, the Federal Circuit has made it clear that *both* a likelihood of success on the merits and irreparable harm must be established before a preliminary injunction may issue, *see Amazon.com*, 239 F.3d at 1350 ("Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors . . ."), and that findings as to all four factors are not necessary where a failure to show a likelihood of success or irreparable harm compels a denial of the requested injunction, *see Texas Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed.Cir.2000); *Polymer Tech., Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed.Cir. 1996); *Reebok Int'l*, 32 F.3d at 1555 ("[T]he district court may deny a prelimi-

nary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors.").

In this matter, the Court has found that Larami has not demonstrated a likelihood of success on the merits. Therefore, the Court will deny Plaintiff's motion for a preliminary injunction without analyzing the three other relevant factors.